JAMES L. ELMONDORPH v. THE CITIZENS' MUTUAL FIRE INSURANCE COMPANY OF KENT, ALLEGAN, AND OTTAWA COUNTIES.

*Fire insurance—Waiver of forfeiture.*

The question whether the defendant had waived the forfeiture by plaintiff of his insurance by reason of his non-payment of an assessment is held to have been properly submitted to the jury, who were instructed that if they found that defendant continued to treat plaintiff's policy as in force subsequent to serving notice of the assessment, and up to the time of the fire, a period of about nine months, without objection or protest or notice of any claim of forfeiture, and by its conduct led the plaintiff to believe that it considered the policy as in force, such conduct would be a waiver of any forfeiture or suspension of the policy, and the defendant would be liable for the loss.

Error to superior court of Grand Rapids. (Adsit, J., presiding.) Argued March 4, 1892. Decided March 18, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson,* for appellant, contended:

1. The court erred in submitting the question of waiver to the jury; citing *Leslie v. Smith*, 32 Mich. 64; *Folkerts v. Standish*, 55 Id. 463; *Bewick v. Butterfield*, 60 Id. 203; *Seligman v. Ten Eyck's Estate*, Id. 267; *Locke v. Priestly Sleigh Co.*, 71 Id. 263.

*McGarry & McKnight*, for plaintiff, contended:

1. While neither the charter nor the by-laws provide for the third notice, which it was the custom of the defendant to send to its policy-holders, the conduct of the company in sending such notice was calculated to raise a reasonable expectation that such notice would be given, and the policy-holder was entitled to rely upon it in case of any particular assessment; citing *Mayer v. Insurance Co.*, 38 Iowa, 304; *Insurance Co. v. Smith*, 44 Ohio St. 156; *Insurance Co. v. Insurance Co.*, 86 Penn. St. 236; and the withholding of the notices provided for by the by-laws and custom of the company estopped it from insisting upon the forfeiture or suspension of the policy; citing *Hall v. Knights of Honor*, 24 Fed. Rep. 450.

2. The fact that the insurance company did not cancel the policy, or give notice of its suspension under the provisions therefor, when knowledge came to it of its violation, is evidence of an intention to waive such violation; citing *Insurance Co. v. Anderson*, 77 Ill. 384; *Insurance Co. v. French*, 30 Ohio St. 240; *Joliffe v. Insurance Co.*, 39 Wis. 111; *Insurance Co. v. Gibson*, 52 Ga. 640; *Guernsey v. Insurance Co.*, 17 Minn. 104; *Potter v. Insurance Co.*, 5 Hill, 147; *Allen v. Insurance Co.*, 99 Mass. 161; *Hamilton v. Insurance Co.*, 94 Mo. 353; *Insurance Co. v. Spiers*, 87 Ky. 285.

LONG, J. This is an action upon a fire insurance policy. The policy was issued February 9, 1883, and the fire occurred June 19, 1890. The defendant is a mutual company, organized under the laws of this State. The plaintiff had kept his policy alive by the payment of his annual assessments until after the assessment for the year 1889, which assessment was ordered by the board of directors of the defendant company, July 26 of that year, and was spread upon all the policies which were assessable under the constitution and by-laws of the company. The plaintiff received the notice of assessment some time in September, 1889, and on the 21st of November following was in Grand Rapids, where the office of the company is

located, and looked for that office, but failed to find it.
Four days later he wrote to the secretary, stating that
he had received the assessment notice, and mentioning
his being in Grand Rapids on the 21st, his search for the
office, and his failure to find it. He also stated that his
house had been on fire twice, but the damage was slight,
and he thought it could be fixed for $5, and he closed
with the statement: "I will come as soon I can, and pay
the assessment as soon as I am able." The amount of
his policy was $500, and the amount of the assessment
made upon it $1.50. The plaintiff received the following
letter from the secretary of the company in answer:

"GRAND RAPIDS, MICH., Dec. 2, 1889.
"MR. J. L. ELMONDORPH,
         "Lowell, Mich.:
  "Yours of the 25th inst. has reached us. You state
that your house has taken fire twice recently. It seems
that there is something wrong with your pipes or chim-
neys, and need your immediate attention. If you wish
us to continue to carry your risk, you must put them in
first-class order for protection from fire. (See by-laws 6,
8, 9, and 10 on your policy.) If you think the company
is liable for your damage, please write to us and explain,
giving the date of each fire and how each occurred,
condition of your pipes, chimneys, etc., and then we can
tell what further action to take in the matter. Return
this letter to us, and oblige,
                "Yours truly,
                    "D. W. COLBURN, Secretary."

  This letter was received by the plaintiff, who on the
2d day of January, 1890, wrote the following reply:

  "MR. COLBURN,—*Dear Sir*: You wish to know how
my house got fire and the date. The first in February
one year last, by clothes getting against the stove-pipe
accidentally by the children. I did not know anything
about it until it burned through and went out; burnt
to the plaster. The date of month I have forgot; my
chimney safe and all right. The next fire caught the
27th one year last March, by the soot falling on the roof.

I thought I would see you when down, but had not time. Now, if I am entitled to anything I should be glad. I suppose I ought to notified you before. In regard to the assessment, I will pay the first time I come down, but my health is poor, and I am 71 years old; but if the weather is good, I will call and see you.

"Yours truly,

"JAS. L. ELMONDORPH."

The company never answered this letter. No other communication passed between the parties until after the destruction of plaintiff's house by fire, and at which time this assessment had not been paid. Shortly after the burning, plaintiff's attorney called at the office of the defendant company, and asked its secretary for a blank upon which to make proofs of loss. This was furnished by the secretary, who advised the attorney that he did not see that the plaintiff had any claim on the company, because the policy was suspended; but that the board of directors would convene before the loss would be payable, and, if there was any claim, it could then be brought before the board. The proofs of loss were prepared and served upon the secretary of the company eight days after the fire. The board of directors thereafter had a meeting, and rejected the claim on the ground that the plaintiff had ceased to be a member of the company before the date of the fire.

The provisions of the charter relating to the continuance or suspension of membership in the company are contained in section 13 of the charter, and are as follows:

"Any member may at any time withdraw from the company by returning his or her policy, and paying all claims, if any, against the same; and each member shall pay his or her assessment, respectively, to the secretary or his receiver within thirty days after due notice by mail, and in default thereof, if payment be not made within thirty days thereafter, said delinquent's insurance may be suspended by the secretary or the board; and, if payment is not made within ninety days after

due notice by mail, said insurance shall stand suspended, and thenceforth every such delinquent shall cease to have any right in or claim against this company, by reason of any policy or agreement of insurance executed by it; but such delinquent shall continue liable for all demands due from him or her to this company."

The plea in the case was the general issue. There was no notice of any special matter given. It was conceded upon the trial that the policy in question was issued on application of the plaintiff, and the honesty of the loss was not questioned. The single question presented to the court and jury was whether the policy was in force at the time of the loss. The trial court refused to direct a verdict in favor of the defendant, but submitted the question to the jury whether the plaintiff's policy was in force at the time the loss occurred. Under the evidence and charge of the court the jury returned a verdict of $525 in favor of the plaintiff. Defendant brings error.

Upon the trial the secretary of the company was called as a witness, and upon his cross-examination was asked:

"Q. Why did you not answer that letter? [Referring to the letter of the plaintiff dated January 2, 1890.]

"A. Because I had directed him to his policy; that would give him better language than I could give him in writing.

"Q. You were sending out third notices, calling their attention to their liability of having polices suspended, were you not?

"A. Yes, sir.

"Q. You told him, if he thought the company was liable, to let you know when the losses occurred, how they occurred, and the condition of his chimneys, and you would see what further could be done?

"A. Yes, sir.

"Q. You get his answer, and then remain quiet? Why did you do that?

"A. Because he said he was coming in the office in a very few days.

"Q. Is that the only reason why?

"A. The reason why he had read the policy."

The secretary further testified that the reason he did not notify the plaintiff that he had no claim against the company for the small fires which he wrote about was that the fires had occurred so long previously that no claim could be made, but that'he had not notified the plaintiff further about the payment of his assessment, for the reason that the plaintiff had the policy in his possession, and that he (the secretary) expected he would come in soon, when the matter could be talked over and explained to him. His attention was called to the letter written by him to the plaintiff, and he was asked why he did not state to the plaintiff that he had no claim and that payment would be refused, and answered:

"I thought it would do just as well for him when he would come in after a few days.

"*Q.* You were waiting for him to come in?

"*A.* Yes, sir.

"*Q.* You did not take any action refusing to allow that loss, did you?

"*A.* No; only by silence."

It had been the custom of the company, under its charter and by-laws, to send out three notices of assessment, the first notice containing the list of the persons who had sustained losses, and the amount at which each had been adjusted, and showing the amount assessed against the member to whom the notice was given. The second notice was to the effect that the receiving agencies to whom the party might in the first instance pay had been taken up, and that the amount was then payable, with five per cent. added, at the home office in Grand Rapids, within 30 days from the date of such second notice. This second notice was given at the end of thirty days from the first. If the assessment was not paid at the end of sixty days, a third notice was given, which gave notice to the party that, by the provisions

of the policy, his insurance was suspended.    Section 15
of the by-laws provides:

"When any assessment is made, the receiving agencies
shall be kept open sixty days.    At the expiration of
thirty days, all delinquents shall be re-notified.    Sixty
days from date, the receiving agencies shall be taken up,
and all assessments unpaid shall be increased one-quarter,
payable at the office of the company only, and liable to
compulsory collection at the end of thirty days more,—
ninety days from date of assessment."

Neither this second nor third notice was ever given to
the plaintiff, and he was never notified prior to the time
of the last fire that his policy had been suspended.
Upon this state of facts the court charged the jury
that—

"If you find that the company did continue to treat
this policy as being in force subsequent to the time it
served this notice on the plaintiff, in September, 1889,
up to the time of receiving notice of the loss of June 19,
1890, for which this action is brought to recover, with-
out objection, notice, or protest on its part of any claim
of forfeiture, and by its conduct led the plaintiff to
believe it so considered the policy in force, I instruct
you that would be a waiver of forfeiture or suspension of
the policy, under that section of the policy that I have
read to you [section 13, above quoted], and it would be
liable for the full amount of the loss claimed."

The plaintiff testified that the reason he did not pay
the assessment under the first notice was that, receiving
no answer from the secretary of the company to his
second letter, he thought they were willing to wait until
he could go down, when his loss would be talked over,
and the whole matter would be satisfactorily arranged.
In view of these circumstances, we think the court was
not in error in submitting to the jury the question
whether there had been a waiver of forfeiture, as a matter
of fact, for their determination.    It is conceded that the

last two notices which it was customary for the company to send, and which are shown to have been sent to every other member, were not sent to the plaintiff, so that he had no notice of the suspension of his policy until after the fire; and. the secretary of the company, in reply to plaintiff's letter, stated to the plaintiff that he would tell him, if he (plaintiff) would give him particulars of his loss, what action the company would take concerning these small losses. The plaintiff replies to this, saying that he considers the company liable for his losses, and answers all the questions asked by the secretary, and refers again to the allowance the company should make to him, and says: "I will be down in a short time." To this the company made no answer, and the plaintiff may well have understood that the company did not intend to forfeit his policy by his failing to pay the assessment, but that it would wait until it had considered. his claim for the small losses, when these losses and the assessment against him would be adjusted. The court was not in error in submitting these facts and circumstances to the jury to determine whether the company had waived its right to claim a forfeiture of the policy.

Some other questions are raised which we do not deem important to discuss, and they are overruled.

The judgment must be affirmed, with costs.

MORSE, C. J., McGRATH and GRANT, JJ., concurred with LONG, J.

MONTGOMERY, J. I do not think that there was any evidence of waiver. In my opinion, the judgment should. be reversed.