James C. O’Brien, J.
Defendant James Hamill Associates, Inc., hereinafter called li Hamill ”, is a domestic corporation with offices in the City of Rochester, New York, and up to approximately June 1, 1959 was the general agent of the other defendant, General Insurance Company of America.
General Insurance Company of America, hereinafter called “ General Insurance ”, is a foreign insurance corporation, licensed to do business in the State of New York, and among other things authorized under the laws of such State to write various policies of insurance on automobiles including liability, fire and theft.
Plaintiff secured insurance on his automobile through his broker, one Jack Furman, on September 10, 1955, with a policy which expired on September 10,1956. This was written through Hamill. Either that year or in the following year, on the same anniversary date, Hamill, as general agent for defendant General Insurance, issued a new policy and continued to do so and thereafter on each anniversary date, viz.: September 10, 11 automatically” renewed the policy of insurance on the auto *917 mobile which plaintiff owned, each insurance policy thereafter being written by General Insurance. The policy with which we are primarily concerned was written on September 10, 1958, and by its terms expired September 10, 1959. It covered liability for personal injuries, property damage and also fire and theft. It was a so-called “comprehensive” policy and as has been said, was written by defendant Hamill as general agent for General Insurance.
On or about June 1, 1959, for some reason that does not appear, General Insurance cancelled the Hamill agency. At the time with which we are concerned, viz.: on or about September 10, 1959, when plaintiff’s policy was to expire, and in fact did expire, and for some few months prior thereto, Hamill had no authority to write any insurance or renew any insurance for General Insurance.
The policy which defendants wrote for plaintiff on or about September 10, 1958, covered two automobiles then owned by plaintiff, a Ford and a Chevrolet. Plaintiff, sometime in August or early September, 1959, proposed to and did sell the Chevrolet, so sometime (perhaps two or three weeks) before his policy was to expire, plaintiff went to Hamill’s office in Rochester and instructed a Mrs. Schuster, who was a clerk employed there, to omit the Chevrolet automobile from the renewal policy of insurance. As we have seen, by reason of Hamill no longer being a general agent of General Insurance, such policy could not be renewed, but of this fact plaintiff was not informed; no one had told him of the change by General Insurance of its agency. Mrs. Schuster assured plaintiff that the matter would be taken care of, by telling him that Hamill was far behind in its clerical and typewriting work. Plaintiff did not specifically ask her whether or not the policy would be renewed. Apparently he assumed that it would be. Mrs. Schuster did not tell him that it would be renewed. In any event she had no authority to write a new policy, which would have to be done, in fact, if that agency was to provide plaintiff with insurance. She was not an officer of Hamill, which was a corporation, and concededly had no authority to renew or agree to renew policies or to agree to write any policies without first having received authority from one of the officers of Hamill. She had received no such authority in this instance. Furman, on or about the expiration date of plaintiff’s policy, but before the loss occurred, had a conversation with the same Mrs. Schuster, of substantially the same kind (Furman did not specifically ask whether or not a new policy would be written or the old policy renewed, nor did Mrs. Schuster specifically *918 promise or agree that either of these things would be done). Furman did not know, he says, and I believe him, that there had been a change by virtue of which Hamill no longer could write insurance for General Insurance.
On the late evening of September 11 or the early morning of September 12, 1959, plaintiff’s car was stolen. Had the policy of insurance above mentioned been in effect on the date of theft, plaintiff undoubtedly would be entitled to his loss from General Insurance.
The policy, by its terms, had expired before the theft occurred. General Insurance had not given to plaintiff any notice in writing that it would not renew the policy and plaintiff claims that under section 93-c of article 6-A of the Vehicle and Traffic Law, the policy and/or its provisions, including the theft coverage, remained in full force and effect by reason of General Insurance’s failure to send such written notice.
Some consideration of the language and meaning of the appropriate provisions of the Vehicle and Traffic Law is now necessary.
Section 93-c formerly in article 6-A is now new section 313 of article 6 of the Vehicle and Traffic Law. Article 6-A in which section 93-c was found sets forth the policy of New York State, requiring from motorists minimal liability insurance coverage. Section 93-c on which plaintiff relies, limited the rights of insurance companies to refuse to renew insurance policies for which ‘ ‘ a certificate of insurance ’ ’ had been filed with the Commissioner of Motor Vehicles. This “ certificate of insurance ” constituted' proof of proper coverage as required by article 6-A. The limitation required that an insurance company could not refuse to renew such policy unless 20 days’ prior notice of such refusal had been given to the assured.
The question with which we are confronted, therefore, is: Does the theft coverage portion of the comprehensive policy written by defendant General Insurance have the protection of section 93-c?
Under section 93-a, now section 311, of the Vehicle and Traffic Law, the term ‘ ‘ certificate of insurance ’ ’ is defined as meaning evidence furnished by an insurance company to the Commissioner of Motor Vehicles, that the company had issued a policy of liability insurance upon the motor vehicle designated therein. Accordingly by the language of the definition found in section 93-a, section 93-c is limited to policies of liability insurance on motor vehicles and was not intended to encompass and does not include theft coverage. Therefore the theft coverage in the policy in question in fact expired on September 10, 1959.
*919 I accordingly conclude that since the loss which plaintiff sustained was not one which involved the provisions of his policy relating to liability to other persons, but only the provisions of the theft policy, he is not afforded a remedy against General Insurance based upon its failure to send the written notice specified in the Vehicle and Traffic Law.
Plaintiff also contends that the course of conduct between him, as the assured, the Hamill Agency and General Insurance in ‘ ‘ automatically ’ ’ rewriting, every year for several years, a policy of insurance on his automobile, including the theft provision, in effect constituted a contract or agreement on the part of each of them to renew such policy on its expiration date. I conclude that neither this conduct nor the conversations specifically mentioned herein affected any such contractual relationship which obligated the defendants to rewrite or renew the policy of insurance. (29 Am. Jur., Insurance, § 166, p. 564.)
It is quite possible that because of Hamill’s relations with the plaintiff in preceding years, there was some duty upon Hamill, not necessarily to write a new policy of insurance for plaintiff, but at least to notify the plaintiff that it was unable to do so. If Hamill had such a duty, its failure to perform the same by not notifying plaintiff, personally, of its inability to write such policy, would be negligence. However, since there is no plea of negligence in plaintiff’s complaint, we cannot consider this aspect of the matter.
I have come to the conclusion that the declaration in the judgment must be to the effect that there was no contract of insurance in favor of plaintiff with both or either of the two defendants at the time of the theft, i.e., on or about September 12, 1959. In view of the circumstances and in the exercise of discretion, I make this determination, without costs against the plaintiff.