PASTUCHA *v.* ROTH.

1. APPEAL AND ERROR—GARNISHMENT—FINDING OF FACT BY COURT—
   RETENTION OF PREMIUM INSTALMENTS AFTER DENIAL OF LIABILITY.
   Finding of fact by trial court in garnishment case tried. without
   a jury that agent of insurer under automobile liability policy
   had first accepted instalment payments on premium and then
   made denial of liability under policy for accidental injuries
   sustained by plaintiffs and thereafter such payments were
   never returned or tendered to insured, being supported by rec-
   ord, is not disturbed by Supreme Court on garnishee's appeal.

2. INSURANCE—AUTOMOBILES—ACCEPTANCE OF PAST DUE PREMIUM—
   FORFEITURE—ESTOPPEL.
   Insurer under automobile liability policy, which first uncondi-
   tionally accepted past due instalment payments of an annual
   premium, then denied liability for injuries but retained pay-
   ments as made, is estopped from insisting upon forfeiture or
   lapsing of policy since the payment was made and accepted
   in accordance with the terms of the policy and as made in
   due time.

3. ESTOPPEL.
   There can be no estoppel unless a party is misled to his prejudice
   by the one against whom it is set up.

4. SAME—WAIVER DEFINED.
   Waiver is the intentional relinquishment of a known right.

5. INSURANCE—AUTOMOBILES—ACCEPTANCE OF PAST DUE PREMIUMS
   —AUTHORITY OF AGENT—ESTOPPEL.
   Insurer under automobile liability policy, whose agent was duly
   authorized to collect, refuse, or conditionally accept payments
   of premiums when past due and receipt for payments made,

* Continued from Vol. 289.

cannot be heard to say he had no authority to receive past due payment of premium unconditionally and issue receipt therefor where he failed to make use of form especially prepared for his use when payment was past due and automobile had been involved in an accident after payment became due and before it was made.

6. SAME—LAPSING OF POLICY—WAIVER BY UNCONDITIONAL ACCEPTANCE OF PREMIUM.

Insurer under automobile liability policy whose general agent had authority to waive the strict conditions of the policy by accepting premiums after the policy could have been forfeited and did accept past due premium payments unconditionally after occurrence and knowledge of the accident, which action was ratified by acceptance and retention of the premiums by the insurer, waived defense that policy had lapsed prior to occurrence of accident for failure to pay premiums.

7. SAME—WAIVER OF POLICY REQUIREMENTS.

Provisions of automobile liability insurance policy relative to notice of accident, proof of loss, and delivery of summons were waived by insurer by its denial of liability under the policy for failure to make timely payment of premiums notwithstanding provision of policy that waiver of any provisions thereof must be written upon or attached thereto.

8. SAME—CONSTRUCTION OF POLICY.

Insurance policies must be construed in favor of the insured.

9. SAME—AUTOMOBILE LIABILITY POLICY—FATHER'S CLAIM FOR SONS' HOSPITAL AND DOCTOR BILLS.

Claim of father for hospital and doctor bills incurred in connection with injuries sustained by his two minor sons *held*, proper claim under automobile liability policy providing "for claims growing out of injuries to or death of one person," since the wrongful conduct of the insured made it necessary for the father to incur liability for medical expenses.

10. GARNISHMENT—AUTOMOBILE INSURANCE—EXCESSIVE JUDGMENT—REMAND.

In garnishment proceeding against insurer under automobile liability policy in which the limit of recovery for injuries to any one person was $5,000, where judgment in that amount was rendered against garnishee in favor of one plaintiff, a minor, another judgment in the amount of $3,000 in favor of his minor brother, and yet another in the amount of $2,000 in

favor of their father for hospital and doctor bills, where record fails to disclose proportion of last-mentioned judgment expended in care of first-mentioned plaintiff, case is remanded for determination of amount expended for such care and its deduction from $5,000 judgment.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted January 11, 1939. (Docket No. 61, Calendar No. 40,349.)   Decided September 5, 1939.

Separate garnishment proceedings by Stephen Pastucha, Joseph Pastucha, by next friend, and Frank Pastucha, by next friend, against Richard Roth and William Roth, principal defendants, and Wolverine Insurance Company, garnishee defendant. Cases consolidated for trial and appeal. Judgments for plaintiffs. Garnishee defendant appeals. First two judgments affirmed; last, modified and affirmed.

*Alexis J. Rogoski, R. Glen Dunn,* and *Noel P. Fox,* for plaintiffs.

*Brake, Davis & Miel* (*Kelley, Sessions, Warner & Eger,* of counsel), for garnishee defendant.

SHARPE, J.   Three judgments were entered against the defendants Richard and William Roth in the circuit court of Muskegon county. Subsequently writs of garnishment were issued against the Wolverine Insurance Company upon each judgment.

The original cases involved an automobile accident at Muskegon on July 15, 1935, and as a result Stephen Pastucha, father of the other plaintiffs, obtained a judgment against defendants Roth in the sum of $2,000 for hospital and doctor bills incurred by him as a result of the injuries to his minor sons. A judgment was also secured by Stephen Pastucha as next

friend for his son Joseph in the sum of $3,000; and a like judgment for $6,000 for his son Frank.

The three garnishment suits were tried together by the court without a jury. Separate judgments were rendered against the garnishee defendant as follows: $2,000 in favor of Stephen Pastucha with interest and taxable costs; $3,000 in favor of Joseph Pastucha with interest and taxable costs; and $5,000 in favor of Frank Pastucha with interest and taxable costs. Garnishee defendant, Wolverine Insurance Company, appeals.

The trial court made the following finding of facts:

"The evidence establishes the existence of the following facts by a preponderance of the evidence and to the satisfaction of the court: On June 12, 1935, C. A. Potter, agent of the garnishee defendant located at Mt. Pleasant, Michigan, issued a thirty-day binder, so-called, to defendant William Roth at that city upon taking from the latter an application, bearing his signature, for a policy of insurance on Roth's automobile. The home office of the garnishee defendant at Lansing issued a policy to the defendant which was delivered to him a few days later. Defendant William Roth agreed to pay the premiums in monthly instalments, the first of which was to become due one month after June 12, 1935, the effective date of the policy. The first premium payment of $3.20 made by the defendant, William Roth, hereinafter referred to as the defendant, was delivered to Mr. Potter's office by his brother-in-law, Frank Fisher, who then advised the girl in charge of the office that defendant's automobile had been involved in an accident in Muskegon in which two boys had been injured and inquired as to whether the policy was still in force or was required to be reinstated; and was advised by her that the policy was in force and reinstatement was unnecessary. Fisher received a receipt dated July 23, 1935, for the sum of $3.20 'in payment of automobile insurance

premium covering the period of (left blank) months ending 12:01 a. m. (left blank) 193— on the following described automobile: (description left blank): All as indicated on Policy No. 254132 or application if no policy has been issued. If payment is for reinstatement of lapsed policy give actual time of payment (left blank) o'clock (left blank) M.'

"The above receipt was signed C. A. Potter, agent, and underneath his name appeared the initials of the office girl. On or about August 24, 1935, defendant met Mr. Potter on the street in Mt. Pleasant and advised him that he had been involved in an accident and was advised by the latter that thereafter premiums would be paid and received on a month to month basis. Defendant, previous to this conversation with Mr. Potter, had personally paid premiums in the sum of $6.40 on the policy at Mr. Potter's office and had received a receipt dated August 24, 1935, executed by the girl in his office, which receipt bore Mr. Potter's name and the initials of the office girl. The receipt is in the same form as hereinbefore set forth except that it recites that the amount is in 'payment of automobile [insurance] premium covering the period of 2 months ending 12:01 a. m. (blank) 193—. * * * If payment is for reinstatement of lapsed policy give actual time of payment (blank) o'clock (blank) M.'

"The evidence satisfies me that Mr. Potter's statement that thereafter premiums would be paid from month to month was made to defendant after he had paid the premiums evidenced by the receipt dated August 24, 1935; on that occasion Mr. Potter denied that the company was liable on the policy. While this receipt specifies that it is payment covering the period of two months, no significance can be attached to that recital as indicating that the payment was for coverage for a period of two months after that date because the space provided for filling in the date of the ending of the two months' period was left blank. Furthermore it is undisputed that the premiums were to be paid on a monthly plan and

the sum of $6.40 was in fact payment of premiums for two months. Defendant thereafter made premium payments of $3.20 on October 28, 1935; $3.20 on November 26, 1935, and $3.20 on January 20, 1936. None of the receipts contained a recital that they were accepted as payment for reinstatement of lapsed policy. The home office of the defendant company accepted and retained the premiums paid and never made any attempt to reinstate the policy or change its terms.

"The suit commenced by Stephen Pastucha against defendants resulted in summons being served upon the defendant, William Roth, on July 14, 1936, and he mailed the summons to garnishee defendant together with a short letter on August 19, 1936. The latter through its counsel, Mr. Brake, read the contents of a notice disclaiming all liability on the part of garnishee defendant to William Roth and he signed an agreement requesting garnishee defendant to defend the case, agreeing that such defense should constitute no waiver of any rights of the latter. Defendant advised Mr. Brake that he had informed Mr. Potter as to the accident. After commencement of the other suits the same procedure was followed with reference to serving the notice upon defendant that the company disclaimed liability, and taking a nonwaiver agreement signed by him."

Garnishee defendant appeals and claims:

1.  That Roth's car at the time of the accident was not covered by the garnishee defendant's policy, under the plain terms thereof;

2.  That there has been no waiver of the company's defenses against the insured in this case and the company is not estopped from urging those defenses:

a.  There was no express waiver by the girl in Potter's office.

b.  There was no waiver or estoppel by the acceptance or retention of premiums.

c.   There was no waiver or estoppel by reason of the defense of the suits by the company.

3.   That the judgments exceed the amount of the garnishee defendant's liability as fixed by the policy.

Plaintiffs contend that the policy of insurance was in force at the time they sustained injuries inasmuch as garnishee defendant waived its right to declare the policy forfeited for the nonpayment of premiums by accepting and retaining same; and waived the requirement of notice and proof of loss and the additional requirement of immediate delivery of summons in the suits commenced against defendant William Roth.

The pertinent parts of the policy are as follows:

"In consideration of the warranties and the payment of the premium herein mentioned does hereby insure the insured described in said warranties which are contained herein and made a part hereof against hazards arising from the ownership or operation of the motor vehicle described herein, for which the premium has been or shall be paid; the coverage hereof being specifically indicated in the following schedule without territorial restrictions:   *   *   *

## PAYMENT OF PREMIUM

"This policy shall take effect only upon the prepayment of the premiums stated herein.   The insured may elect to pay monthly one-tenth of the annual premium stated herein, for twelve consecutive months and this policy shall be continued in force only while such premium is prepaid.   Subsequent monthly premiums shall be due and payable on or before the same day of each month as the day of the month on which this policy becomes effective. *   *   *

"If any monthly premiums shall not be prepaid as aforesaid, this policy shall expire at 12:01 a. m. on the day when the premium is due and shall be

reinstated only upon written indorsement signed by an officer of the company which shall become a part of this policy; provided, however, that the company shall not be liable for any loss or claim which shall occur or accrue while any such premium is in default and provided also that this policy shall expire at 12:01 a. m. on the expiration of one year from the effective date hereof. The company shall be liable only for claims arising while this policy is in full force and effect. * * *

"This policy is made and accepted subject to the provisions, conditions, terms and warranties set forth herein or indorsed hereon together with such other provisions, conditions or warranties as may be indorsed hereon or added hereto, and upon acceptance of this policy the insured agrees that its terms embody all agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of the company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto, nor shall any privileges or permission affecting the insurance under this policy, exist or be claimed by the insured unless so written or attached."

It appears to us that the first question presenting itself for solution relates to the lapsing of the insurance policy by its own terms. Plaintiffs concede that a provision of the policy authorized the insurance company at its option to treat the policy as lapsed in event any payment of a premium instalment was not timely made, but contend that the insurance company waived this right by accepting the entire amount of the premium due and receipting therefor, and in receiving subsequent premium payments without at any time remitting the premiums for that period in which it could otherwise be claimed the policy had lapsed. The record sustains the finding of the trial court that payments

were made and receipts given for the following payments: July 23, 1935,—$3.20 and August 24, 1935,—$6.40; that these payments were not returned by the insurance company to the policy holder; and that Potter, the insurance company's agent, did not inform Roth that protection under the policy was thereafter to be on a monthly basis until after the August 24th payment was made. On these questions of fact we do not disturb the finding of the trial court. See *Otto Misch Co.* v. *E. E. Davis Co.,* 241 Mich. 285; *Leonard* v. *Hey,* 269 Mich. 491 (37 N. C. C. A. 111); *Mayala* v. *Underwood Veneer Co.,* 281 Mich. 434.

The principal question in this case relates to the claimed waiver by the insurance company of its right to lapse the policy by accepting the premiums when past due.

In *Staffan* v. *Cigarmakers' International Union of America,* 204 Mich. 1, 7, the court said:

"We are of opinion that the facts in this case bring it clearly within the rule laid down in *Wallace* v. *Fraternal Mystic Circle,* 121 Mich. 263, 269, wherein we quoted with approval the following:

" 'If the company has, by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the insured, or by the acts and dealings of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy, declaring a forfeiture in event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture. See *Jones* v. *Preferred Bankers' Life Assurance Co.,* 120 Mich. 211.' "

In *Dobranski* v. *Lincoln Mutual Casualty Co.*, 275 Mich. 1, 9, the court said:

"Whether the defendant casualty company is to be held estopped from denying a transfer of the insurance depends on whether it, by action or inaction, misled plaintiff into believing he was protected by the insurance, he being bound to exercise reasonable care in forming such belief.

" 'There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up.' *Shean* v. *United States Fidelity & Guaranty Co.*, 263 Mich. 535, 541."

In *Weller* v. *Manufacturer's Life Ins. Co.*, 256 Mich. 532, 536, we said:

"Waiver is the intentional relinquishment of a known right. The right here involved was to insist on forfeiture or to decline revival of the policy except by reinstatement in accordance with its terms. Defendant knew its right. It had full knowledge of the facts avoiding or forfeiting the insurance. It waived reinstatement and showing of insurability. It waived forfeiture. It accepted the premium unconditionally. Such acceptance was rightly held by the trial court to be an intentional relinquishment of the known right, a waiver. The policy was thereby revived. *Hoyle* v. *Grange Life Assurance Ass'n*, 214 Mich. 603; 3 Joyce on Insurance (2d Ed.) § 1369; 3 Couch, Cyclopedia of Insurance, § 687. * * *

"The payment of the premium here was not as upon reinstatement but in legal effect as made and accepted in accordance with the terms of the policy and as made in due time."

In the case at bar we find that Potter was the agent of the insurance company with authority to collect premiums and he could refuse to accept premiums when past due, or could accept them on condition the provisions of the policy were complied with, i. e., reinstatement upon written indorsement; and he had authority to issue receipts for payments

made, but in this case failed to make use of a form especially prepared to meet the need of the situation before him. The company cannot now be heard to say that he had no authority in receiving past due premiums and issuing the receipts therefor. *Rorick* v. *State Mutual Rodded Fire Ins. Co.,* 263 Mich. 169; *Grossman* v. *Langer,* 269 Mich. 506; *King* v. *American Insurance Union, Inc.,* 272 Mich. 226.

Potter and the garnishee defendant knew or should have known that the premiums had not been paid and had ample opportunity to instruct the clerk in the office that no further payments should be received or, if received, should be accompanied with request for reinstatement under the policy. Garnishee defendant and Potter not only did not do this, but unconditionally accepted and retained past due premiums.

The remaining question relates to the authority of Potter as agent of the insurance company to bind the insurance company by his actions. In *Coverdill* v. *Northern Ins. Co. of New York,* 243 Mich. 395, 398, this court said:

"Insurance agents generally transact their business by and through employees, and when they do so the acts of these employees are as binding upon the insurance company as though done by the agents themselves."

In *Rorick* v. *State Mutual Rodded Fire Ins. Co.,* *supra,* we said:

"Under the facts, Mr. Humphrey was defendant's agent in receiving the application, collecting the premiums, and forwarding the application to defendant; his acts were the acts of the company; his knowledge the knowledge of the company. *Russell* v. *Detroit Mutual Fire Ins. Co.,* 80 Mich. 407; *Blake* v. *Farmers Mutual Lightning Protected Fire Ins. Co.,* 194 Mich. 589. * * * Humphrey was held out by the

company as its agent. The company dealt with him as its agent, as did plaintiff, who had no notice or knowledge of any limitation upon Humphrey's authority. He had apparent authority to effect insurance. He took the application, made the survey, collected the premium and other charges for the policy, and the application and the money are still in his hands, or in the hands of defendant company. His agency cannot be narrowed by limitations on his authority not communicated to plaintiff. *Insurance Co.* v. *Wilkinson*, 13 Wall. (80 U. S.) 222; *Ames* v. *Auto Owners Ins. Co.*, 225 Mich. 44."

In the case at bar Potter must be considered as a general agent with authority to waive the strict conditions of the policy by accepting premiums after the policy could have been forfeited. Moreover, the insurance company in accepting and retaining these premiums ratified the acts of its agent. Garnishee defendant has waived the defense that the policy had lapsed prior to July 15, 1935, for failure to pay premiums. *New England Life Ins. Co.* v. *Le Vey*, 264 Mich. 282; *Lord* v. *National Protective Society*, 129 Mich. 335; *Weller* v. *Manufacturer's Life Ins. Co., supra.*

It is also contended by the insurance company that there was no waiver or estoppel by reason of defense on the suits by the company. In our opinion, the requirement of notice, proof of loss and delivery of summons was waived by the insurance company by its denial of liability on the policy of insurance.

In *Johnson* v. *Yorkshire Ins. Co.*, 224 Mich. 493, 497, we said:

"The items and particulars of the fire were of no importance to the company, inasmuch as it had denied that any contract existed between it and the insured. The defense that no contract existed was a clear waiver of this provision of the policy."

In *Dickinson* v. *Homerich,* 248 Mich. 634, we said:

"Having thus based its nonliability solely upon the ground that the policy had lapsed, the circuit judge was right in holding that other defenses were waived by the insurance company. And such denial of liability constituted a waiver of other possible defenses notwithstanding the provision that the terms of the policy cannot be altered or waived except by written indorsement, et cetera."

See, also, *Bowyer* v. *Professional Underwriters,* 269 Mich. 87; *Citizens State Bank of Clare* v. *State Mutual Rodded Fire Ins. Co. of Michigan,* 276 Mich. 62.

Garnishee defendant next contends that the three judgments exceed the amount of the insurance company's liability as fixed by the policy. The policy provides:

"The company's liability to all insureds under 'bodily injury liability,' Item I, of the schedule of coverages as shown herein shall be limited to $5,000 for claims growing out of injuries to or death of one person and in event of injury to or death of more than one person in any one accident the limit for one person shall apply to each of such persons and the total amount for which the company shall be liable shall be limited to $10,000. * * *

"The company will, in addition to said limits, pay all costs taxed against the insured in any legal proceedings defended by the company and interest accruing after entry of judgment on any part of a judgment for which the company may be liable."

Insurance policies must be construed in favor of the insured. *Pietrantonio* v. *Travelers Ins. Co. of Hartford, Connecticut,* 282 Mich. 111. In the case at bar, the claim is made that the judgment of $2,000 in favor of the father for hospital and doctor bills incurred in connection with the injuries to both boys is not covered by any of the conditions named in the policy. The policy provides, *"for claims grow-*

*ing out of injuries to or death of one person.''* The injury to the father consists of the wrongful conduct of defendants which made it necessary for him to incur liability for medical expenses. It is a proper claim.

The judgment of the trial court in the case of Joseph Pastucha for $3,000 and the judgment in the case of Stephen Pastucha for $2,000 are affirmed, with costs to plaintiffs.

In the case of Frank Pastucha, the judgment recovered in the circuit court was for $5,000. The policy limits the total liability of the defendant company ''for claims growing out of injuries to or death of one person'' to $5,000 plus the taxed costs and interest from the date of judgment until payment. The judgment of $2,000 recovered by Stephen Pastucha, the father, was for hospital and doctor bills incurred by him in connection with the injury to both boys. It is evident that a part of the judgment recovered by the father was for the medical care of Frank Pastucha. The amount of such expense plus the amount of the judgment recovered by Frank Pastucha exceeds the amount possible to recover under the policy for an injury to one person.

An examination of the record fails to disclose the proportion of the $2,000 judgment that was expended for the care of Frank Pastucha. It becomes necessary to remand this case to the trial court for the purpose of determining the amount expended for the medical care of Frank Pastucha and the same to be deducted from the $5,000 judgment. Additional testimony at the option of the trial court may be taken and a judgment will be entered in favor of Frank Pastucha in the reduced amount. Garnishee defendant may recover costs in this case.

Butzel, C. J., and Wiest, Bushnell, Chandler, North, and McAllister, JJ., concurred. Potter, J., did not sit.