ALLSTATE INSURANCE COMPANY v SNARSKI

Docket No. 94453. Submitted June 8, 1988, at Grand Rapids. Decided
   August 10, 1988. Leave to appeal denied, 432 Mich 883.

   Jeremy Snarski, a minor, was injured when struck by an automo-
   bile insured by Allstate Insurance Company. When Community
   Service Insurance Company, which had insured the Snarskis'
   automobile, denied coverage on the basis that the Snarskis'
   policy had lapsed for nonpayment of the premium, Allstate
   paid Jeremy's medical expenses. Allstate then brought in Kent
   Circuit Court an action seeking reimbursement of benefits it
   had paid, alleging that Community Service, through its conduct
   or the conduct of its agent, Dale Triplett, was estopped from
   denying coverage and had waived any defense of lack of cover-
   age for nonpayment of premium. The proofs at trial showed
   that the premium on the policy covering the Snarskis' automo-
   bile was due on October 1, 1981. On October 7, 1981, Commu-
   nity Service sent a notice of nonpayment of premium which
   also indicated there was a grace period of ten days, or, if the
   tenth day was on a weekend or holiday, to the next business
   day after the tenth day after the due date. This provision
   thereby allowed the Snarskis to maintain continuous coverage
   by making their premium payment by the end of the business
   day on Monday, October 12, 1981. The accident in which
   Jeremy was injured occurred on October 8, 1981. On or before
   October 12, 1981, Triplett informed Mrs. Snarski in response to
   her inquiry that she need not worry about the premium but to
   get it in as soon as she could. Payment was made on October
   13, 1981. The matter went to the jury solely on the questions of
   estoppel and waiver. The jury returned a verdict in favor of
   Allstate. The trial court, George R. Cook, J., entered a judg-
   ment on the verdict. Community Service appealed. Allstate
   cross-appealed.

   The Court of Appeals held:

   Allstate could properly bring this subrogation action against

REFERENCES

Am Jur 2d, Automobile Insurance § 443.

See the Index to Annotations under Automobile Insurance; No-
Fault Insurance; Subrogation.

Community Service on the basis of its claim that the Community Service policy was in force on the date of the accident. In pursuing that claim Allstate could properly raise any claim, including equitable claims, which the Snarskis could have raised to establish the existence of insurance coverage by Community Service.

Affirmed.

AUTOMOBILES — INSURANCE — NO-FAULT — SUBROGATION — PLEADING — EQUITY — STANDING.

An automobile no-fault insurer who has paid medical benefits to an injured person may bring a subrogation action against another no-fault insurer which under the statutory scheme of priority of liability is properly the insurer who is responsible for the claim; in the subrogation action the insurer who paid the expenses, if faced with a denial by the other insurer of the claim on the basis that the policy under which the claim is being made had lapsed at the time of the accident, may plead any theories, including equitable theories, which the insured might have pled to establish that the policy was in force at the time of the accident.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Stephen S. Muhich* and *Todd W. Kingma*), for plaintiff.

*Dilley, Dewey & Damon, P.C.* (by *Jonathan S. Damon*), for Community Service Insurance Company.

*Tolley, Fisher & Verwys, P.C.* (by *Sharon R. Brinks*), for Dale Triplett.

Before: MAHER, P.J., and MURPHY and R. B. BURNS,* JJ.

PER CURIAM. Community Service Insurance Company appeals as of right from the trial court's judgment on the verdict of a jury in favor of plaintiff, Allstate Insurance Company, against

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Community Service in the amount of $250,000 together with interest and costs.[1]

On October 8, 1981, Jeremy Snarski, the minor son of Patricia and Anthony Snarski, was severely injured when he was struck by an automobile. Community Service, the Snarskis' insurer, denied coverage to the Snarskis, claiming forfeiture for nonpayment of premium. Therefore, Allstate, the insurer of the automobile that struck Jeremy, paid the substantial medical expenses that were incurred for treatment of Jeremy's injuries. Allstate brought suit against Community Service and others, seeking reimbursement of the no-fault automobile benefits that Allstate paid on behalf of Jeremy Snarski.

The facts further show that the renewal premium on the no-fault automobile insurance policy issued to the Snarskis by Community Service was due on October 1, 1981. On October 7, 1981, Community Service sent a notice of nonpayment of renewal premium to the Snarskis. This notice extended a ten-day grace period which allowed coverage to be reinstated without interruption if the premium was received within ten days of the due date. If the tenth day fell on a weekend or a holiday, the grace period was extended until the end of the next business day. Thus, in this case, the Snarskis would have had to pay their premium on or before October 12, 1981, to maintain continuous coverage.

Patricia Snarski testified at trial that Jeremy Snarski's accident occurred on October 8, 1981. Mrs. Snarski recalled receiving a premium notice before Jeremy's accident, but she did not remem-

---

[1] Other claims, cross-claims, verdicts and judgments were rendered in the court below that are not addressed in this opinion as they are inconsequential to this appeal, have not been preserved or have been waived.

ber receiving a notice of nonpayment of the renewal payment.

On Saturday, October 10, 1981, two days after Jeremy's accident, Patricia Snarski telephoned Dale Triplett, her insurance agent, to inform him of Jeremy's accident. Mrs. Snarski does not remember talking to Triplett about the premium payment during this conversation. She merely told Triplett that Jeremy had been hit by a car, that he was in critical condition and was not expected to live. Triplett told Mrs. Snarski that he would get in touch with a claims adjustor. Triplett did not mention anything about the premium being due when he spoke with Mrs. Snarski on October 10, 1981.

Mrs. Snarski further testified at trial that she again called Triplett on October 12, 1981, to find out what to do about getting the premium in, because she remembered that the premium had not been paid and she was concerned about Jeremy's accident and whether they had insurance coverage. Triplett told Mrs. Snarski to bring the check down as soon as possible and not to worry because he would take care of things.

Triplett testified at trial that he was an exclusive agent for Community Service. When one of Triplett's customers did not pay the insurance premium by the due date, Triplett, as well as the customer, would receive a copy of a lapse notice.

Triplett also testified that he recalls receiving only one telephone call from Mrs. Snarski before October 13, 1981. During that conversation, Mrs. Snarski told him that Jeremy had been in an automobile accident and was in the hospital and that she was concerned because the insurance premium had not been paid. Triplett acknowledged that he basically informed Mrs. Snarski not to worry about the premium payment, to remain

at the hospital with her son and to get the premium in as soon as she could.

The record below reveals that Mr. Snarski delivered the check for the insurance premium to Triplett's office on October 13, 1981. Mrs. Snarski testified that had Triplett told her to get the check in on October 12, 1981, she would have complied. She relied on Triplett's advice as Community Service's agent when he told her not to worry and that there would be coverage for Jeremy's accident if she got the check down to him as soon as she could. Because of what Triplett said to her on the telephone, she believed she had coverage for Jeremy's accident.

By letter dated April 27, 1982, Community Service notified Allstate that it had taken the position that the Snarskis' automobile policy was not in effect from October 1, 1981, to October 12, 1981, because a premium was not paid within the ten-day grace period.

Allstate subsequently brought this suit seeking reimbursement of the no-fault automobile benefits paid on behalf of Jeremy Snarski. The complaint alleged that Community Service, through its conduct or the conduct of its agent, Triplett, was estopped from denying insurance coverage to the Snarskis, that Community Service had waived any defense to coverage for nonpayment of premium, and that Community Service extended no-fault coverage to the Snarski family on October 8, 1981, the date of Jeremy Snarski's injury.

The jury trial was conducted and based on a stipulation between Allstate and Community Service that the only issues to be presented to the jury were those of waiver and estoppel. At the conclusion of the trial, the jury returned the verdict in favor of Allstate, and the court entered judgment accordingly.

We believe this appeal can be addressed on the basis of two issues.

I. SHOULD THE JURY VERDICT IN FAVOR OF ALL-STATE BE AFFIRMED BECAUSE ALLSTATE IS ENTITLED TO SUBROGATION FROM COMMUNITY SERVICE BASED ON THE DOCTRINES OF ESTOPPEL AND WAIVER?

MCL 500.3114(1); MSA 24.13114(1) provides in pertinent part:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

Under this statute, if the Snarskis had no-fault coverage with Community Service on the date of Jeremy Snarski's accident, Community Service would be obligated to pay for Jeremy's injuries under his parents' policy.

Because Community Service denied coverage for Jeremy's accident, Allstate, the insurer of the driver of the car that hit Jeremy, was required to pay for Jeremy's injuries pursuant to MCL 500.3115(1); MSA 24.13115(1), which provides:

> Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
> (a) Insurers of owners or registrants of motor vehicles involved in the accident.
> (b) Insurers of operators of motor vehicles involved in the accident.

On appeal, Allstate argues that its obligation to pay the Snarskis arose only because of Community Service's failure to accept its obligation to its insureds, the Snarskis, inasmuch as Jeremy Snarski's accident fell within the terms of the policy between Community Service and the Snarskis. Accordingly, Allstate argues that it was entitled to recover under a theory of subrogation all payments it had made on behalf of Jeremy Snarski. We agree.

In *Foremost Life Ins Co v Waters,* 88 Mich App 599, 603; 278 NW2d 688 (1979), rev'd on other grounds 415 Mich 303 (1982), reh den 417 Mich 1103 (1983), this Court reviewed the general principles of subrogation and stated:

> Subrogation is defined as follows:
> "The substitution of one person in the place of another with reference to a lawful claim, demand or right, *Whyel v Smith,* 101 Fla 971, 134 So 552, 554; so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. *Home Owners' Loan Corporation v Baker,* 299 Mass 158, 12 NE2d 199, 201; *Gerken v Davidson Grocery Co,* 57 Idaho 670, 69 P2d 122, 126. A legal fiction through which a person who, not as a volunteer or in his own wrong, and in absence of outstanding and superior equities, pays debt of another, is substituted to all rights and remedies of the other, and the debt is treated in equity as still existing for his benefit, and the doctrine is broad enough to include every instance in which one party pays the debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by such other. *Home Owners' Loan Corporation v Sears, Roebuck & Co,* 123 Conn 232, 193 A 769, 722" Black's Law Dictionary (4th ed) p 1595.

It is well established that a subrogee (*e.g.,* the instant plaintiff) acquires no greater rights than

those possessed by his subrogor (*e.g.,* the instant defendant). This principle is true whether subrogation is conventional or arises by operation of law. *Northwestern Mutual Ins Co v Jackson Vibrators, Inc,* 402 F2d 37, 40 (CA 6, 1968). Subrogation is an equitable doctrine which is applied when someone, not a volunteer, discharges an obligation for which another person is primarily liable. 83 CJS, Subrogation, § 8, p 600.

In *Allstate Ins Co v Citizens Ins Co of America,* 118 Mich App 594, 603-604; 325 NW2d 505 (1982), this Court stated:

[W]henever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of subrogation. *Farmers Ins Group v Progressive Casualty Ins Co,* 84 Mich App 474, 484; 269 NW2d 647 (1978). This resolution permits the insured person to receive prompt payment while the insurers thereafter dispute their liabilities. All issues may be resolved in the later dispute as the insurer who paid stands in the shoes of the insured, as its subrogee, possessing all of the insured's legal rights. *Federal Kemper Ins Co v Western Ins Cos,* 97 Mich App 204, 208; 293 NW2d 765 (1980).

In this case, since Allstate paid the claim of the Snarskis, it became subrogated to all of the legal rights of Community Service's insureds, the Snarskis.

Allstate argues that it properly asserted before the trier of facts the doctrines of estoppel and waiver to establish its right to subrogation from Community Service. Community Service, on the other hand, argues that Allstate has impermissibly used the doctrines of waiver and estoppel to create a cause of action against it. However, the complaint filed by Allstate makes clear that Allstate's

cause of action against Community Service is based on the principle of subrogation and that Allstate properly asserted the doctrines of estoppel and waiver to establish its right to subrogation from Community Service.

The doctrine of estoppel or waiver has been used in this state to defeat an insurer's claim that the insured forfeited his policy for nonpayment of a premium. In *Pastucha v Roth,* 290 Mich 1, 9; 287 NW 355 (1939), our Supreme Court, citing *Staffan v Cigarmakers' International Union of America,* 204 Mich 1, 7-8; 169 NW 876 (1918), stated:

> "We are of opinion that the facts in this case bring it clearly within the rule laid down in *Wallace v Fraternal Mystic Circle,* 121 Mich 263, 269 [80 NW 6 (1899)], wherein we quoted with approval the following:
>
> " 'If the company has, by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the insured, or by the acts and dealings of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy, declaring a forfeiture in event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and

when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture. See *Jones v Preferred Bankers' Life Assurance Co,* 120 Mich 211 [79 NW 204] (1899).' "

The elements of estoppel were set forth in *Cook v Grand River Hydoelectric Power Co, Inc,* 131 Mich App 821, 828; 346 NW2d 881 (1984), as follows:

An estoppel arises where: (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

Unlike *Ruddock v Detroit Life Ins Co,* 209 Mich 638; 177 NW2d 242 (1920), this is not a case where the jury was being asked to create insurance where none existed or to extend the scope of insurance coverage. Rather, this is a case dealing with: (1) The extent of the coverage anticipated under the contract; (2) The effect of the failure to pay the premium when due; (3) The effect of a contractually provided grace period; and (4) Whether a jury could determine that the affirmative action by the agent constituted estoppel or waiver which thereby defeated the insurer's claim of nonliability for nonpayment of premium.

With respect to the actions of Community Service's agent, Dale Triplett, the law is well settled that a principal is responsible for the acts of its agent done within the scope of the agent's authority. *Caldwell v Cleveland-Cliffs Iron Co,* 111 Mich App 721, 731; 315 NW2d 186 (1981), lv den 417 Mich 914 (1983).

In *Central Wholesale Co v Sefa,* 351 Mich 17, 27; 87 NW2d 94 (1957), our Supreme Court stated:

" 'In Story on Agency (9th ed), § 443, it is said:

" ' "But the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority. It extends further, and binds the principal in all cases where the agent is acting within the scope of his usual employment, or has held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For, in all such cases, where 1 of 2 innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence."

" 'Persons dealing with an agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business.

" ' "The general rule is that the powers of an agent are prima facie coextensive with the business intrusted to his care." *Grossman v Langer,* 269 Mich 506, 510 [257 NW 875 (1934)].

" 'In an action against a principal by one dealing with an agent, the apparent authority of the latter must be gathered from all the facts and circumstances properly admitted in evidence. *Grinnell v Carbide & Carbon Chemicals Corp,* 282 Mich 509 [276 NW 535 (1937)].

" 'A principal who has placed his agent in such a situation that a third person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming the agent is authorized to perform a particular act in behalf of the principal, is estopped to deny agent's authority to perform it. *Grinnell v Carbide & Carbon Chemicals Corp, supra.' "*

See also *Mossman v Millenbach Motor Sales,* 284 Mich 562, 566-567; 280 NW 50 (1938).

It is clear that these principles of agency law apply to the facts of this case and that the jury could properly determine that Triplett bound Community Service to the insurance contract with the Snarskis.

## II. DID ALLSTATE HAVE STANDING TO BRING THIS ACTION?

Community Service sought, by motions for summary judgment and directed verdict, a ruling that Allstate lacked standing to bring this action. Community Service essentially contends that Allstate sought to reform the contract of insurance between Community Service and the Snarskis by extending the period of coverage and that Allstate cannot maintain an action for reformation because it was neither a party to the contract nor in privity with either party to the contract. Allstate, on the other hand, argues that Community Service's argument is without merit because Allstate did not seek to reform Community Service's insurance policy, but, rather, it sought subrogation for payments it made because of Community Service's failure to honor its contractual obligations to the Snarskis.

Our review of Allstate's complaint reveals that Allstate's, and not Community Service's, argument has merit. As we noted under Issue I, when a priority question arises between two insurers, the preferred method of resolution is for one insurer to pay the insured's claim and then sue the other insurer under a theory of subrogation. The insurer who paid the claim then stands in the shoes of the insured, as its subrogee, possessing all of the in-

sured's legal rights. *Allstate Ins Co v Citizens Ins Co of America, supra.*

In this case, because Community Service refused to pay the Snarskis' claim, Allstate paid the claim and then brought an action against Community Service for subrogation. We believe that the trial court properly allowed Allstate to maintain the instant action against Community Service.

Affirmed.