CARR, Chief Judge,
concurring.
I agree with the majority’s opinion and believe that, insofar as the opinion discusses the jurisdictional issues, the majority’s decision is clear and concise. I write separately only to clarify my understanding of two of the remaining issues: 1) the relationship between preferential transfer law and Michigan’s equitable subrogation law; and 2) whether recordation of the deed is a necessary prerequisite to deed validity.
A. Preferential Transfer and Equitable Subrogation
The bankruptcy code allows a trustee in bankruptcy to avoid any transfer that is made ninety days prior to the date of the filing of the bankruptcy petition as being a preferential transfer. 11 U.S.C. § 547(b)(4)(A). Section 547(e)(2)(A) defines a transfer in real property as taking place when the transfer took place so long as the transfer is perfected within ten days. Otherwise, a transfer in real property is deemed to have taken place “at the time [the] transfer is perfected,” if the perfection occurred outside of the ten day window. 11 U.S.C. § 547(e)(2)(B) (emphasis added).
It is undisputed that Superior Bank did not perfect its security interest in the property until the recordation fell within the ninety-day period prior to the bankruptcy. Under the Bankruptcy Code, the transfer of the interest in property to Superior Bank was deemed to have occurred at the time of the perfection. Under the plain and unambiguous meaning of the bankruptcy code, the trustee in bankruptcy is allowed to avoid this transfer. However, Superior Bank argued that they should be equitably subrogated to Empire National Bank’s mortgage, which was recorded prior to the start of the preferential transfer period. If Superior Bank’s contention was correct, the trustee in bankruptcy’s effort to avoid Superior Bank’s interest would be thwarted.
“Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.” Hartford Accident & Indem. Co. v. The Used Car Factory, Inc., 461 Mich. 210, 600 N.W.2d 630, 632 (1999). Further, the sub-rogee must have some obligation to pay the debt of another and not be a “mere volunteer.” Id.; see also Lentz v. Stoflet, 280 Mich. 446, 273 N.W. 763, 764 (1937).
Most cases involving equitable subrogation involve some sort of contractual or insurance responsibility/relationship by one party to pay a third party. See In re Glade Springs, Inc., 826 F.2d 440 (6th Cir.1987) (applying Michigan law, holding a confirming bank contractually obligated to pay on a letter of credit could equitably subrogate, to the rights of the party that should have been paid on the letter against the issuing bank); Commercial Union Ins. Co. v. Med. Protective Co., 426 Mich. 109, 393 N.W.2d 479 (1986) (excess insurer may be equitably subrogated to insured party— *749 and be allowed to sue a primary insurer— when it pays a claim on behalf of an insured party that the primary insurer declined to pay; because the excess insurer was contractually bound to pay the debt of the insured party, they were a party for whom equitable subrogation was appropriate); Allstate Ins. Co. v. Snarski, 174 Mich.App. 148, 435 N.W.2d 408 (1988) (in an automobile accident, the insurance company that paid a claim to its own insured when the driver at fault’s insurance company should have paid was properly equitably subrogated to their insured’s claim against the at-fault driver). But see Robinson Trust, v. Ardmore Acres, Inc., 6 F.Supp.2d 640 (E.D.Mich.1998) (a good faith purchaser for value and without notice of an existing tax lien can subrogate to a senior lienholder and claim a priority over the federal tax lien).[1]
The Supreme Court of Michigan applies a three part test to determine if a party is one which should be allowed to exercise equitable subrogation rights. See Hartford Accident, 600 N.W.2d at 633. The test is:
(1) a special relationship must exist between the client and the third party in which the potential for conflicts of interest is eliminated...,
(2) the third party must lack any other available legal remedy, and
(3) the third party must not be a “mere volunteer,” i.e., the damage must have been incurred as a consequence of the third party’s fulfillment of a legal or equitable duty the third party owed to the client.
Id. The first part of this test is not in dispute. However, Superior Bank does not prevail on parts two and three.
As to part two of the test, Superior Bank had another legal remedy: if Superi- or Bank had perfected its security interest in time, or at least one day before the ninety-day preference period had begun, it would never have been in a situation where its security interest was avoidable. Superior Bank’s legal remedy was timely recor-dation. We now should not allow Superior Bank to claim a right of equitable subrogation when it had an available — and easy to accomplish — legal remedy to protect itself.
As to part three of the test, Superior argued that, because it refinanced the debtor’s prior loan, in essence paying a debt for which another is primarily responsible, it was not a “mere volunteer,” but rather the type of party that the Michigan equitable subrogation doctrine envisions. This is simply incorrect. Although Superi- or Bank eventually was bound to pay the loan to Empire, Superior Bank entered into this contract for its own pecuniary gain, thereby “volunteering” to pay the debt. Superior Bank was not an insurance company or surety, but rather a mortgage refinancer. Superior Bank did not pay Empire because a contractual provision between Empire and Superior Bank so required, but rather because it was part of the refinancing deal between itself and the debtor.
Even if Superior Bank was correct that equitable subrogation law says that, because it was contractually bound to pay the debtor’s debt, it is a party that is properly equitably subrogated, Superior *750 Bank would be subrogated to the rights of the debtor, and not to Empire.[2] Superior Bank cannot subrogate to Empire’s security interest. Superior Bank was not contractually obligated by Empire to pay Empire. Superior Bank was contractually obligated by the debtor to pay Empire. The only party to whom FSB could possibly subrogate itself to is the debtor.
For the aforementioned reasons, I concur with the majority opinion. Superior Bank should not be equitably subrogated to Empire’s rights and, therefore, its security interest was properly avoided.
B. Recordation of the Deed
Superior Bank argued that it was hypocritical for the trustee in bankruptcy to seek to avoid Superior Bank’s interest in the property when the debtor’s interest was never recorded. Superior Bank’s argument was that, because the trustee in bankruptcy did not know about the debt- or’s interest initially (because it was unrecorded), and because the trustee could or should have known about Superior Bank’s interest, the trustee should not be able to avoid Superior Bank’s recorded interest when the debtor’s interest was not recorded. Superior Bank’s argument, therefore, was that the debtor’s interest should not be considered because it was unrecorded. The law does not bear this contention out.
The majority opinion cites Resh v. Fox, 365 Mich. 288, 112 N.W.2d 486, 488 (1961) for the proposition that a deed only needs to be delivered to be valid; recordation is not necessary for a deed to be valid. I believe that the answer may additionally be found in the clear language of Michigan’s recordation statute.
Under this statute:
Every conveyance of real estate within the state hereafter made, which shall not be recorded... shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.
M.C.L. § 565.29 (emphasis added). This statute does not require a conveyance to be recorded to be a valid conveyance. It only requires a conveyance to be recorded if the conveyee wants to have his or her interest in the real property valid against a subsequent good faith purchaser. Id.
Under § 565.29, even though the debt- or’s interest in the property was never recorded in the real property records, it is uncontroverted that she received a quitclaim deed to the property. Therefore, the debtor had a valid interest in the property and such property was properly considered by the trustee in bankruptcy.
For these reasons, I concur with the majority’s decision that the debtor’s inter *751 est in the property was properly considered by the trustee in bankruptcy.

. The facts of Robinson are not applicable here. Superior Bank was not a good faith purchaser for value and without notice who then sought to be subrogated to a security interest to avoid being subject to an intermediate lien. Superior Bank sought to be subro-gated to a bank lien that was no longer in effect, not to avoid an intermediate lien that Superior did not know about when retaining a security interest in the debtor’s property. Rather, Superior Bank seeks to avoid having its failure to timely record said security interest not be avoided by the trustee in bankruptcy-

. For example: A is a debtor of B. I, a surety or insurance company, is contractually obligated by B to pay B if A defaults on A's obligation. If A defaults and I pays B, I can subrogate to B ’s rights against A. However, in the case before us, Superior Bank is on A's side of the equation — Superior Bank was not contractually obligated by B to pay B, but rather by A to pay B. Therefore, under the equitable subrogation doctrine, Superior Bank can only be subrogated to the rights of the debtor — A—and not to Empire National Bank — B.