HILL v. FARMERS' MUTUAL FIRE-INSURANCE COMPANY OF MANISTEE, BENZIE & MASON COUNTIES.

1. MUTUAL INSURANCE—NONPAYMENT OF ASSESSMENTS—FORFEITURE.

The charter of a mutual fire-insurance company provided that no policy should be binding until actual payment of the premium, and, also, that, in case of the failure of a member to pay an assessment within 30 days after notice, his insurance should be suspended, and he should thenceforth have no claim against the company for losses sustained until his assessment should be paid. *Held,* that the default of a member operated to suspend his policy, which could not be reinstated by a tender of the assessment after a loss, so as to render the company liable therefor; and this though the charter gave the company the right to sue for delinquent assessments.

2. SAME—WAIVER.

Where a policy in a mutual fire-insurance company became suspended for nonpayment of an assessment, after which the insured sustained a loss, the subsequent receipt of the delinquent assessment by the treasurer of the company did not constitute a waiver of the forfeiture; the assessment being seasonably returned, with notice that the insured had ceased to be a member of the company.

3. SAME.

Where the charter of a mutual fire-insurance company provided that policies should lapse for nonpayment of assessments, the silence of the company for nearly a year after a member became in default did not operate as a waiver thereof, though the company was authorized by the charter to sue for delinquent assessments.

Error to Benzie; Chittenden, J. Submitted November 15, 1901. Decided December 21, 1901.

*Assumpsit* by Russell C. Hill against the Farmers' Mutual Fire-Insurance Company of Manistee, Benzie & Mason Counties on a policy of insurance. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

Defendant is a mutual fire-insurance company. The plaintiff became a member of it in 1890, and had a policy issued to him at that time upon his house, household goods, barn and contents, and live stock. He made a written application, in which he stated that the stovepipes were in good order, and he would keep them so. Two of the by-laws are:

"1. This company will not insure dwelling houses that are without suitable chimneys, and safes for stovepipes passing through ceilings and partitions.

"2. No insurance shall be considered as binding until the payment of the premium. A promissory note given for such premium shall be deemed the payment of the premium; but, in case such note shall not be paid at maturity, then this policy shall have no force or effect so long as the same shall remain unpaid."

Four years later that policy was surrendered, and a new policy (the one now in suit) was issued. No new application was made. The new policy was the same number as the application. The only change made was an increase in the amount of the insurance.

The property was wholly destroyed by fire on Saturday, August 5, 1899. The buildings were then in the same condition as when the policies were issued. An assessment was duly made in August, 1898, and notice thereof was duly served on plaintiff September 1st, which he did not pay until Wednesday following the fire, when he paid it to the treasurer. The treasurer soon after, and seasonably, returned it, claiming that plaintiff's policy was not in force. At the time of this claimed payment no notice of the loss had been given to the company, and no legal communication had been made to any of the officers of either the character, extent, or nature of the loss sustained by plaintiff. Defendant's board of directors met the Monday after the fire. The treasurer was present. They had learned of the fire, but did not know the extent of the loss. The liability of defendant was discussed, and the directors concluded that it was not liable. Liability being denied, plaintiff brought suit.

Those parts of defendant's charter affecting the questions presented are:

"When such assessment shall have been completed according to section 18 of this charter, the secretary shall prepare a written or printed circular, a copy of which he shall direct to each member of this company, to his or her last known post-office address, setting forth to such member the amount of such member's assessment; and each member shall pay his or her assessment to the president or his receiver within thirty days after the issuing of said notice, and, in default thereof, his or her insurance shall be suspended, and shall thenceforth have no claim against said company for losses sustained until his or her assessment is paid."

" If any member of said company shall neglect or refuse for the space of thirty days after the date of such circular, as provided for in section 19, to pay any assessment therein made, the secretary may proceed forthwith to collect the same by due process of law, adding 25 per centum to the amount of said assessment of each of said delinquents, and such delinquent shall be liable for all demands due from him or her to said company; and no insurance policy shall be binding until the actual payment of premium."

The court directed a verdict for plaintiff.

*Fitch & Reek*, for appellant.

*D. G. F. Warner*, for appellee.

GRANT, J. (*after stating the facts*). 1. The court held that there was no forfeiture, that plaintiff was a perpetual member of the company, and that the provisions of the charter and by-laws in regard to suspension simply mean "that during the time that members of this company are in arrears they can collect no loss, but as soon as they are paid up they can collect for any and all losses that may occur either before or after the time,—that is, if there is nothing due to the company." We think that the court did not construe these provisions of the charter correctly. Courts cannot make contracts; they can only construe them. Plaintiff and defendant made a contract of insurance, and both parties must abide by it. In the con-

tract it was agreed that "no insurance shall be considered
as binding until the payment of the premium" (section 2
of by-laws); that, in default of the payment of assess-
ments as provided, the insurance shall be suspended, and
that the insured shall have no claim for losses until his
assessment is paid (section 19 of charter); and that no in-
surance policy shall be binding until the actual payment
of premium (section 20 of charter). Under these provis-
ions, as interpreted by the court below, the insured may
let his premiums or assessments run until a fire has
occurred, then pay them, and recover his loss. "Assess-
ments" and "premiums" are interchangeable words, and
mean the same thing. They are the consideration for the
contracts. In stock companies an annual premium is re-
quired. In these mutual companies the premiums consist
of the assessments made from time to time to pay losses
and expenses. Each member of the defendant company
contracted to pay these premiums within 30 days after
notice, and that his failure to so pay should operate as a sus-
pension of his policy, rendering it void so long as he chose
to let the premiums remain unpaid. It does not affect the
question that defendant might sue delinquent members to
recover the premiums. If the defendant had promptly
canceled the policy for nonpayment, it could have sued
plaintiff to recover the premiums, because it had already
earned them, and plaintiff had already had the benefit of
them. In the absence of a waiver of payment, the defend-
ant is not liable for losses incurred while the insured is in
default, as was plaintiff in this case. *Williams* v. *In-
surance Co.*, 19 Mich. 451 (2 Am. Rep. 95). It was the
duty of the plaintiff to pay. He agreed that his policy
and all rights under it should be suspended while he was
in default. Under the ruling of the court, this right of
suspension is valueless to the company, because any in-
sured would pay his back premiums after a loss if by so
doing he could reinstate his insurance and collect his loss.
This is not a reasonable construction of this contract of in-
surance.

2. The payment of the premium to the treasurer and its receipt by him did not constitute a waiver. Neither did defendant's silence for a year constitute a waiver, or operate to keep the policy alive. The payment was promptly returned, and nonliability asserted, as soon as knowledge of the facts came to the directors and officers of the defendant. Defendant was guilty of no laches. Plaintiff was the party to move by paying his premium or obtaining an extension of time. Plaintiff relies upon *Elmondorph* v. *Insurance Co.*, 91 Mich. 36 (51 N. W. 926); *Towle* v. *Insurance Co.*, 91 Mich. 219 (51 N. W. 987). In those cases the companies had said or done things inconsistent with the idea that the policy was forfeited. In this case there is nothing but silence. Defendant had a right to keep silent, and to believe that plaintiff knew what his contract was, and that he chose to suspend it by nonpayment.

Reversed, and no new trial ordered.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. LONG, J., did not sit.