Joseph Mooney, Respondent, v Nationwide Mutual Insurance Company, Appellant.

Third Department, December 19, 1991

**APPEARANCES OF COUNSEL**

*Daniel A. Whalen (Paul J. Connolly* of counsel), for appellant.

*Linnan, Bacon & Meyer (Nicholas E. Tishler* of counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH JR., J.

This action was commenced by plaintiff in an attempt to recover for property damage under the collision insurance provision of a comprehensive automobile insurance policy written by defendant and purchased by plaintiff in January

1988. On his insurance application, plaintiff wrongly reported that neither he nor any driver in his household had any motor vehicle violations during the preceding five years. In March 1988, plaintiff substituted a 1988 Pontiac Grand Prix automobile, registered in plaintiff's name but owned by Michael Mooney, plaintiff's brother, in place of the 1979 pickup truck originally covered by the policy; Michael Mooney had a poor driving record including several driving while impaired offenses and a restricted license. Though owned by Michael Mooney, the car was registered in plaintiff's name and the automobile insurance premiums were paid by plaintiff.

On May 8, 1988, plaintiff mailed defendant a check covering an overdue premium. The next day defendant, which apparently had not yet received plaintiff's check, sent plaintiff a notice canceling the policy as of May 26, 1988 for nonpayment of premium. On May 10, 1988, defendant sent notice to plaintiff that due to his and his brother's driving records, his insurance coverage would be terminated on June 2, 1988; plaintiff testified that he did not carefully read this notice because he assumed it concerned his late premium payment. Shortly after receiving the May 10, 1988 letter, plaintiff received a reinstatement notice, prepared by defendant on May 11, 1988, acknowledging the payment, advising that plaintiff's auto insurance was reinstated and retracting the notice of cancellation "effective 05-24-88"; no mention was made of plaintiff's or his brother's driving records or that the policy would still be canceled on June 2, 1988.

On July 25, 1988, upon being ordered by the Department of Motor Vehicles (hereinafter DMV) to turn in his plates and registration because his liability insurance had terminated June 2, 1988, plaintiff presented the reinstatement notice to DMV and the latter thereupon issued him a receipt permitting him to drive. That evening, the Grand Prix was totally destroyed in an accident while Michael Mooney was driving.

When plaintiff informed defendant of the accident, he was told that his coverage had terminated on June 2, 1988. This lawsuit followed. Because plaintiff allegedly could not afford to repair the Grand Prix without the insurance payment, the car, which had been towed to a repair shop soon after the accident, remained there unrepaired, accumulating rent charges until trial two years later.

At trial, plaintiff maintained that he reasonably relied on the fact that defendant's last communication to him was a

reinstatement notice, that DMV had allowed him to keep his plates after seeing that notice, that defendant had cashed all his premium checks, and that he had never received a refund for overpayment on a canceled policy. Defendant claimed that plaintiff did not have an insurable interest in the car and hence was unable to enforce the policy, that this policy was void *ab initio* because plaintiff misrepresented his and his brother's driving records on his application, that plaintiff's reliance on the reinstatement notice was misplaced given the May 10, 1988 cancellation notice, and that a refund check was sent to plaintiff's address after the reinstatement notice but was never cashed.

At the close of the evidence, Supreme Court granted plaintiff's motion for a directed verdict, denied defendant's renewed motion to dismiss the complaint, directed a verdict in favor of plaintiff on the issue of damages, holding that there was no question of fact as to plaintiff's entitlement to $14,112, the cost of storing the vehicle from the date of the accident to the time of trial, and dismissed defendant's counterclaim for unpaid premiums on the continued policy. Defendant appeals.

▪ Regardless of whether plaintiff had an insurable interest in the Grand Prix *(see,* Insurance Law § 3401) or whether he obtained the policy by misrepresentation, defendant could not rescind the policy *ab initio* and it could not terminate the policy prospectively without satisfying the procedural requirements of Vehicle and Traffic Law § 313 *(see, A-Drive Corp. v General Acc. Group,* 114 AD2d 430, 431; *Middlesex Ins. Co. v Carrero,* 103 AD2d 694, 695; *Aetna Cas. & Sur. Co. v Garrett,* 31 AD2d 710, 711, *affd* 26 NY2d 729; *Teeter v Allstate Ins. Co.,* 9 AD2d 176, 185, *affd* 9 NY2d 655). That statute reads that "[n]o contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured * * * a notice of termination" (Vehicle and Traffic Law § 313 [1] [a]).

Defendant urges that this notice requirement is inapplicable in this instance because the policy provision invoked involves collision insurance, not liability insurance. It is defendant's submission that the proscription against retroactive cancellation applies only to contracts of insurance for which a certificate of insurance has been filed with the Commissioner of Motor Vehicles pursuant to Vehicle and Traffic Law § 313 and that, because the certificate of insurance evidences that "liability insurance" (Vehicle and Traffic Law § 311 [5]) as opposed

to collision or theft insurance has been secured on the vehicles designated in the insurance policy, retroactive cancellation is not prohibited here where plaintiff's claimed loss was occasioned by collision damage *(see, Cortina v General Ins. Co.,* 40 Misc 2d 916). This conclusion is said to be reinforced by the fact that the statutory proscription against retroactive cancellation is designed to protect innocent victims, and that plaintiff is not such a victim. Given that the statute is far from unambiguous with respect to the distinction defendant would have us draw and no legislative history has been brought to our attention in support of doing so, and because any ambiguity in the statute's meaning must be construed against the insurer *(Government Employees Ins. Co. v Mizell,* 36 AD2d 452, 454), we are not disposed to adopt defendant's interpretation.

Moreover, we are concerned here with a single comprehensive insurance policy, not separate policies for liability and collision. There is no dispute that because the policy contained liability coverage a certificate of insurance had to and indeed was filed for that single comprehensive policy. The extensive litigation which would undoubtedly ensue if insurers were permitted to dissever the provisions of such a policy so as to allow for the termination of some provisions *ab initio* while leaving others in effect until proper notice is given, leads us to refrain from reaching any such conclusion absent a clear legislative directive to the contrary. Defendant could have properly elected to terminate future coverage based upon confirmation of plaintiff's lack of an insurable interest in the vehicle or because of the purportedly misleading representation of his and his brother's driving records; however, it cannot escape liability for claims arising during the precancellation period *(see, National Superlease v Reliance Ins. Co.,* 123 AD2d 608, 609, *lv denied* 69 NY2d 611).

■ While plaintiff concedes that defendant had a right to cancel his policy based on his driving record and that the May 10, 1988 notice in and of itself would have constituted effective notice of such cancellation, he claims that since he reasonably relied on the May 11, 1988 reinstatement notice in concluding that his auto insurance was reinstated "without a lapse of coverage", defendant should be estopped from asserting the cancellation based on its own in-house procedures which resulted in the reinstatement notice being the last document sent to plaintiff. " 'An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying

changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances' " *(Selzer v Baker,* 295 NY 145, 149, quoting *Metropolitan Life Ins. Co. v Childs Co.,* 230 NY 285, 292-293). While there is evidence in the record supportive of plaintiff's estoppel claim, issues of fact remain regarding whether plaintiff's reliance was reasonable and in good faith and whether defendant's reinstatement notice was the proximate cause of plaintiff not seeking coverage elsewhere *(see, Holm v C.M.P. Sheet Metal,* 89 AD2d 229, 234-235; 57 NY Jur 2d, Estoppel, Ratification, and Waiver, §§ 44, 55, at 65, 82); these issues, which must be resolved at trial *(see, Gulf Trading v New Hampshire Ins. Co.,* 135 AD2d 356, 358) make it necessary to reverse Supreme Court's directed verdict ruling on the first cause of action.

In so doing, we do not intend to foreclose defendant from asserting its affirmative defense of fraud. The fact that the statutory scheme prevents rescission *ab initio* reflects that there is a public interest in automobile insurance policies which exceeds that of the parties to the insurance contract *(Teeter v Allstate Ins. Co., supra,* at 181). For this reason, a suit by an insurer against its insured to recover damages the insurer was obligated to pay to an injured third party as a result of the insured having fraudulently obtained the insurance is cognizable *(see, Reliance Ins. Cos. v Daly,* 38 AD2d 715, 716). Just as the public interest is not disserved by a suit brought by the insurer against its insured who fraudulently procured the policy, neither is it disadvantaged if the insurer is relieved of a claim asserted against it by such an insured. If it is established, as defendant here affirmatively alleges, that plaintiff acquired his policy by fraudulent means, denying plaintiff the right to recover would not impinge in any way upon the protection the policy accords innocent victims, would not subvert the statutory proscription against retroactive cancellation and would comport with elementary fairness.

Should plaintiff ultimately prevail on the first cause of action, Supreme Court's decision granting plaintiff a directed verdict on the second cause of action for storage costs of the destroyed vehicle from the date of accident until the time of trial is proper. Defendant does not dispute that the amount charged per day for storage was reasonable; in fact, defendant's appraiser testified to that effect. Regarding defendant's contention that an issue of fact exists as to whether plaintiff met his burden to mitigate damages, it is noteworthy that

plaintiff was required by the terms of the insurance policy to see that the "damaged property insured under this policy be protected and made available to [defendant] for examination". Disposing of the car for salvage value before defendant's appraiser had examined it would not, as defendant claims, have been reasonable, for it would have constituted a breach of the insurance contract. Since defendant did not dispute the amount of the storage rates, there is no question of fact for the jury.

Our conclusion that a directed verdict on the first cause of action is inappropriate also impacts on Supreme Court's decision to dismiss defendant's counterclaim to recover additional premiums. If upon retrial it is determined that plaintiff is entitled to recover on his first cause of action, a directed verdict should thereupon issue in defendant's favor on its counterclaim. The unrebutted testimony of defendant's underwriter established that, if the policy was not terminated on June 2, 1988, plaintiff owed an additional premium because of a second driver, Michael Mooney, and a March 4, 1988 accident in which plaintiff was involved.

MAHONEY, P. J., WEISS, LEVINE and HARVEY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial on the first cause of action, with resolution of plaintiff's second cause of action and defendant's counterclaim for additional premiums to be determined in a manner not inconsistent with this court's decision.