MORALES v AUTO-OWNERS INSURANCE COMPANY

Docket No. 107351. Argued April 8, 1998 (Calendar No. 13). Decided
July 28, 1998. Rehearing denied 459 Mich 1204.

Alice Jo Morales, as guardian of Antonio Morales, a legally incapaci-
tated person, brought an action in Missaukee Circuit Court against
his no-fault insurer, Auto-Owners Insurance Company, seeking
medical expenses for injuries sustained in an automobile accident.
The defendant had denied coverage, claiming that the policy had
expired six days before the accident. The court, Charles Corwin, J.,
granted summary disposition for the defendant, holding that the
policy had automatically expired at the end of its six-month term
because of failure to pay the premium on time. The Court of
Appeals, SAWYER and R. M. PAJTAS, JJ. (WHITE, P.J., dissenting),
affirmed in an unpublished opinion per curiam, holding that the
late payments gave the defendant the option to refuse to renew the
insurance contract without providing notice (Docket No. 178479).
The plaintiff appeals, and the defendant cross appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
MALLETT, and Justices BRICKLEY, BOYLE, and KELLY, the Supreme
Court held:

Summary disposition was improperly granted because estoppel
prevents the enforcement of the automatic nonrenewal provision of
the insurance policy. Questions of material fact remain with regard
to whether the defendant complied with the notice provisions of
the policy.

1. The principle of estoppel is an equitable defense that prevents
one party to a contract from enforcing a specific provision of the
contract. For equitable estoppel to apply, a plaintiff must establish
that the defendant's acts or representations induced the plaintiff to
believe that the policy was in effect at the time of an accident, that
the plaintiff justifiably relied on this belief, and that the plaintiff
was prejudiced as a result of the belief that the policy was still in
effect. Generally, because provisions for forfeiture, lapse, or sus-
pension for nonpayment of premiums, assessments, or dues are for
the benefit of the insurer, the insurer may waive or may be
estopped from asserting such a provision through its conduct or
words. In this case, the defendant, through its consistent accept-

ance of late payments and its previous reluctance to enforce the automatic nonrenewal provision induced in the insured an honest belief that the terms and conditions of the policy declaring a forfeiture in the event of nonpayment would not be enforced. The plaintiff was justified in believing that the late premiums would be accepted and, consistent with the defendant's prior practice, that it would renew the contract for another six-month term.

2. An insured may not recover categorically where a second notice of nonrenewal is not sent. Rather, it is more appropriate to analyze the facts of the case under the elements of estoppel. Just as an estoppel may prevent the automatic nonrenewal of an insurance policy because of delinquent payments, it also may prevent an insurer from claiming that it met the notice requirements contained within a policy. In this case, the defendant sent the plaintiff a series of notices, the last of which indicated that the policy remained in full force, and directed him to disregard the notice of cancellation previously mailed. No mention was made of the defendant's intent not to renew the policy at the end of the term. Thus, the defendant may have induced the plaintiff to believe that his coverage would continue for another six-month period through its representations in its renewal notice. However, questions of fact exist regarding whether the plaintiff reasonably relied on the reinstatement notice in not seeking insurance coverage elsewhere. The series of notices of nonrenewal, cancellation, and renewal allows the plaintiff to argue that the defendant is estopped from arguing that it properly notified the plaintiff of nonrenewal under the terms of the policy.

Reversed and remanded.

Justice TAYLOR, joined by Justice WEAVER, dissenting, stated that the plaintiff's insurance policy expired by its own terms six days before the automobile accident; it is improper to conclude that estoppel may be invoked to possibly create a new contract so that the plaintiff may receive no-fault benefits.

*Law Offices of Wayne J. Miller, P.C.* (by *Gloria Perez*), for the plaintiff-appellant.

*Bensinger, Cotant, Menkes & Aardema, P.C.* (by *James F. Pagels*), for the defendant-cross appellant.

CAVANAGH, J. At issue in this case is whether defendant properly denied coverage to the plaintiff under the terms of his no-fault insurance policy. Plaintiff was left substantially disabled when he was involved

in an automobile accident on December 3, 1991. Although plaintiff had purchased no-fault coverage from defendant, it refused to cover any of the medical expenses associated with the accident, claiming that the plaintiff's policy expired six days before the accident occurred. Both the trial court and the Court of Appeals agreed with the defendant that the no-fault policy had automatically expired at the end of its six-month term because of plaintiff's failure to pay his premium on time. We disagree with the lower courts' rulings, and, for the reasons stated herein, we reverse.

I

Plaintiff purchased a no-fault automobile insurance policy from Auto-Owners Insurance Company on November 27, 1985. The policy was purchased through the Shepers Insurance Agency, and was for a six-month term. Under the terms of the contract, the policy was to automatically renew every six months subject to the following proviso:

> If the Company elects not to renew this policy, it shall mail to the named insured at his address last known to the Company or to its authorized agent, by first class mail, written notice of such non-renewal not less than twenty days prior to the expiration date; provided that, notwithstanding the failure of the Company to comply with the foregoing provisions of this paragraph, this policy shall terminate on such expiration date, if
>
> (1) the named insured fails to pay the premium as required by the Company for renewal or continuance of this policy, or
>
> (2) the named insured has failed to discharge when due any of his obligations in connection with the payment of premium for this policy, or any installment thereof, whether

> payable directly to the Company or his agent or indirectly under any premium finance plan.
>
> The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice by the Company shall be equivalent to mailing.

Plaintiff's coverage was automatically renewed for nearly six years, despite the fact that he frequently paid his bill late. Anytime plaintiff fell behind in his payments by more than one month, defendant would send him a notice of intent to cancel the policy on a certain date if plaintiff did not cure the delinquency. Plaintiff always paid the balance of his payment before the date on the cancellation notice; thus, plaintiff's coverage was never canceled because of a failure to pay his bill. After each time a notice of cancellation was sent to the plaintiff and he paid the outstanding bill, defendant sent him a "notice of reinstatement," indicating that his coverage had not lapsed and was still in full force.

The specific events leading to the present action are as follows:

(1) On July 24, 1991, plaintiff was involved in a minor no-fault accident, damaging his car door.[1] Defendant compensated him for the damage under the terms of the policy.

(2) Because of the July accident, defendant reviewed plaintiff's driving record and determined that his policy should not be renewed at the end of the current six-month term, expiring on Novem-

---

[1] Plaintiff left his car door open while backing out of his garage. The door hit the garage, causing $450 in damage to the car. Plaintiff's policy had a $100 deductible, so defendant paid a total of $350 for the accident.

ber 27, 1991.[2] On September 9, 1991, defendant generated a nonrenewal notice to be sent to the plaintiff. The notice was given to a private mailing service for posting to the plaintiff. A parallel notice was printed and mailed to the Shepers Insurance Agency on September 11, 1991.

(3) On September 30, 1991, defendant sent a notice of cancellation to plaintiff on the basis of a failure to pay the installment due on September 15, 1991. Plaintiff paid the amount owed for the installment on October 10, 1991 (before the expiration date on the notice of cancellation), and defendant sent him a notice of reinstatement.

(4) On October 31, 1991, defendant sent another notice of cancellation for nonpayment of an installment due earlier in October. Plaintiff again paid the amount due before the effective date of cancellation and was sent another renewal notice. The renewal notice was the last piece of correspondence plaintiff received from defendant. In defendant's view, the policy expired at the end of the term on November 27, 1991.

(5) Plaintiff was involved in an accident on December 3, 1991, six days after the policy expired. He suffered serious brain injuries that have left him substantially disabled. He now lives in a long-term supervised care program. Normally an injured person's no-fault policy would pay most of the expenses for care until

---

[2] Because of the location and nature of the accident, the plaintiff was not ticketed and did not receive any points on his driving record. However, he was assessed "underwriter points" by the defendant for the accident. Thus, the accident, combined with his other prior driving infractions, worsened plaintiff's driving record to the point where defendant decided to no longer insure him.

the total became large enough to shift responsibility to the industry-funded catastrophic claims agency. However, defendant refused to pay any expenses, arguing that it ceased insuring plaintiff on November 27, 1991.

Plaintiff filed suit through his wife. She explained at her deposition that she and the plaintiff were unaware that their coverage had expired. She said that they never received the nonrenewal notice dated September 9, 1991, and that the series of reinstatement notices caused them to believe that they still had coverage and that defendant would bill them for the next payment due.

After discovery, defendant moved for summary disposition on the basis of MCR 2.116(C)(10). The trial judge granted the defendant's motion, making three specific rulings: (1) he found that defendant had complied with the notice requirement for nonrenewal in the insurance contract by its letter dated September 9, 1991; (2) even so, he found that *Slaughter v Smith*, 167 Mich App 400; 421 NW2d 702 (1988), required the defendant to send a second letter expressing its intention to not renew plaintiff's policy because of the reinstatement letters sent to plaintiff after the notice of nonrenewal; and (3) he found that defendant was still entitled to summary disposition because the policy specifically provided that defendant could opt not to renew plaintiff's policy if the policyholder had been late in making payments during the most recent six-month policy term, regardless of whether defendant sent notice of nonrenewal.

On appeal, the Court of Appeals affirmed in a split decision. Unpublished opinion per curiam, issued September 3, 1996 (Docket No. 178479). The majority

agreed with the trial court's rationale for granting summary disposition, but did not reach the first two rulings. The dissenting judge disagreed, concluding that the policy required a nonrenewal notice be sent even if the insured had been late in making payments. She believed summary disposition was inappropriate because there was still a question of fact whether defendant ever sent out the notice of nonrenewal.

We granted leave to appeal and to cross appeal. 456 Mich 904 (1997).

II

When reviewing a motion for summary disposition based on MCR 2.116(C)(10), our task is to determine whether any genuine issue of material fact exists in order to prevent entering a judgment for the moving party as a matter of law. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). As such, we review the lower court's decision de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). We must "consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke*, 442 Mich 374.

In concluding that the plaintiff's no-fault policy terminated at the end of its six-month term, the Court of Appeals focused on the following language of the policy concerning automatic nonrenewal:

[N]otwithstanding the failure of the Company to comply with the foregoing provisions of this paragraph, this policy shall terminate on such expiration date, if

(1) the named insured fails to pay the premium as required by the Company for renewal or continuance of this policy, or

(2) *the named insured has failed to discharge when due any of his obligations in connection with the payment of premium for this policy, or any installment thereof,* whether payable directly to the Company or his agent or indirectly under any premium finance plan. [Emphasis added.]

The Court reasoned that plaintiff had failed to discharge his obligation to pay his premium *when due* by making his payments only after cancellation notices were sent. In other words, plaintiff's late payments gave defendant the option to "refuse to renew plaintiff's insurance contract without providing written notice." Slip op at 2.

However, we find the reasoning of the Court of Appeals unpersuasive under the facts of this case. Defendant repeatedly accepted plaintiff's late payments and continually renewed the plaintiff's policy. As a result, we agree with plaintiff that the principle of equitable estoppel bars defendant from enforcing the automatic nonrenewal provision of the insurance contract.

The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract. With regard to payment provisions of an insurance policy, it is generally recognized that "[b]ecause provisions for forfeiture, lapse, or suspension for nonpayment of premiums, assessments, or dues are for the benefit of the insurer, the insurer may waive, or may be estopped to assert, such a provision through its conduct or words." 5 Couch, Insurance, 3d, § 78:1, p 78-5.

Moreover, "[u]nder certain circumstances the insurer may be estopped from asserting that the policy had expired and that it had not been renewed." 2 Couch, Insurance, 3d, § 29:45, p 29-54.

In the context of insurance contracts, this Court has long held:

"If the company has, by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the insured, or by the acts and dealings of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy, declaring a forfeiture in event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture." [*Pastucha v Roth*, 290 Mich 1, 9; 287 NW 355 (1939), quoting *Wallace v Fraternal Mystic Circle*, 121 Mich 263, 269; 80 NW 6 (1899).]

Therefore, for equitable estoppel to apply, plaintiff must establish (1) that the defendant's acts or representations induced plaintiff to believe that the policy was in effect at the time of the accident, (2) that the plaintiff justifiably relied on this belief, and (3) that

plaintiff was prejudiced as a result of his belief that the policy was still in effect. *Fleckenstein v Citizens' Mut Automobile Ins Co*, 326 Mich 591, 599; 40 NW2d 733 (1950); see also *Unruh v Prudential Property & Casualty Ins Co*, 3 F Supp 2d 1204, 1207-1208 (D Kan, 1998).

In this case, the record reflects that Morales was put on a "flex bill" plan in 1988. Subsequently, plaintiff was sent several late payment notices and notices of cancellation. In each instance, plaintiff paid the premium before the date on which the cancellation became effective, and plaintiff was sent a "notice of renewal."[3] Despite this poor payment history, plaintiff's policy was consistently renewed at the end of each six-month period. Indeed, the record, when read in a light most favorable to plaintiff, reflects that defendant never intended to allow the policy to automatically lapse as a result of late payment of premiums. Despite frequently receiving late payments from plaintiff, defendant only decided not to renew the policy after plaintiff was involved in the minor, car-door accident and he had accrued an additional number of "underwriter points." The notice of nonrenewal sent to plaintiff did not mention his poor payment history; rather, the notice only mentioned his driving record under the portion of the statement explaining the "reason for nonrenewal."

---

[3] The reinstatement notice stated:

Your past premium payment has been received. Please disregard the notice of cancellation previously mailed to you.

*The policy indicated remains in full force.* Please place this notice of coverage with your policy as proof of continuing coverage. [Emphasis added.]

Thus, the defendant, through its consistent accept-
ance of plaintiff's late payments and its previous
reluctance to enforce the automatic nonrenewal pro-
vision, "induced in the mind of the insured an honest
belief that the terms and conditions of the policy,
declaring a forfeiture in event of nonpayment . . .
[would] not be enforced, but that payment [would] be
accepted on a subsequent day or in a different man-
ner . . . ." *Pastucha*, 290 Mich 9.[4] Plaintiff was justi-
fied in believing that defendant would accept his late
premiums, and, consistent with its prior practice,
defendant would then renew the contract for another
six-month term.

The dissent mischaracterizes our use of estoppel in
this instance as "creat[ing] a new contract so that
plaintiff may receive no-fault benefits." *Post* at 307.
However, that is not the case. The principle of estop-
pel, as applied in this case, prevents the defendant
from enforcing a single provision in the already
existing contract. There is nothing new or remarkable
about this proposition with respect to insurance law.
See 16B Appleman, Insurance Law & Practice, § 9081,
pp 489-499 ("An insurer may waive provisions of a
policy placed in it for the insurer's benefit, or may by
its conduct be estopped from asserting defenses oth-
erwise available"). As explained in *Ruddock v Detroit
Life Ins Co*, 209 Mich 638, 653; 177 NW 242 (1920):

> The cases where the doctrine of waiver, of estoppel, has
> been applied have largely been cases where the insurance
> companies have relied on a forfeiture of the contract, upon

---

[4] Mrs. Morales' deposition also indicates that she was confused about
the actual due date of the insurance payments. When she contacted an
agent of the defendant, she was told just to pay the amount owed every
time she received the notice of cancellation.

breaches of the warranties and conditions to work such forfeitures; and in many such cases this court and other courts of last resort have held that if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures, such breaches of warranties and conditions would not be insisted upon, then the companies would be estopped from asserting such defenses.

Indeed, there are many instances in Michigan insurance law where a particular provision of an insurance contract, which normally would operate to end an insurer's liability, is not rigidly enforced because of the principle of estoppel. See *Pastucha, supra*; *Staffan v Cigarmakers' Int'l Union of America*, 204 Mich 1; 169 NW 876 (1918); *Allstate Ins Co v Snarski*, 174 Mich App 148; 435 NW2d 408 (1988).

Further, we do not find persuasive the dissent's citation of *Int'l Harvester Credit Corp v Wilkie*, 695 F2d 231 (CA 6, 1982). In that case, the plaintiff argued that "an insured may employ the doctrine of estoppel to extend the period of coverage under an insurance contract *when the insurance company retains the premium after the time that the insurance contract would have expired by its own terms.*" *Id.* at 234 (emphasis added). It was in this context that the United States Court of Appeals for the Sixth Circuit concluded that "estoppel has not been employed by Michigan courts to extend an insurance policy beyond the terms provided therein . . . ." *Id.* at 235.

In contrast, in the present case we are faced with whether the terms provided *within* the insurance policy provide for continued coverage. By its own terms, the policy would automatically be renewed unless plaintiff received notice to the contrary. The only exception to the notice requirement was the auto-

matic nonrenewal provision: where the "insured has failed to discharge when due any of his obligations in connection with the payment of premium for this policy . . . ." Thus, if the automatic nonrenewal provision is inapplicable, the policy should continue under the terms of the policy. The doctrine of estoppel, as applied in this case, is merely preventing the defendant from invoking a single provision contained in the policy. It does not place an additional burden on the defendant outside the scope of what is expressly contained within the policy. The rest of the policy remains intact, and the other terms in the policy relating to renewal still apply.[5]

III

Defendant argues on cross appeal that even if it cannot invoke the automatic nonrenewal provision for nonpayment of premiums when due, summary disposition was still appropriate because plaintiff was given a notice of nonrenewal as required by the terms of the policy. The policy stated:

> If the Company elects not to renew this policy, it shall mail to the named insured at his address last known to the Company or its authorized agent, by first class mail, written notice of such non-renewal not less than twenty days prior to the expiration date . . . .

---

[5] The dissent also misreads the facts of *Mooney v Nationwide Mut Ins Co*, 172 AD2d 144; 577 NYS2d 506 (1991), discussed below. The insurance company in that case sought to end the plaintiff's insurance on June 2, 1988. *Id.* at 145-146. The court agreed with the plaintiff that estoppel may prevent the defendant from claiming that the policy had actually terminated on June 2, 1988, and the insurer may be liable for the accident that occurred on July 25, 1988. Thus, contrary to the dissent's claims, *Mooney* did involve using the principle of estoppel to extend coverage beyond the date the policy was supposed to end.

Defendant argues that it complied with this notice requirement because it mailed plaintiff a notice of nonrenewal on September 9, 1991; therefore, the policy was not renewed after it expired on November 27, 1991.

In response, plaintiff points to the fact that the last "notice" he received was a notice explaining that his policy remained "in full force" and to disregard the previous notice of cancellation. He argues that this Court should apply the holding in *Slaughter v Smith*, *supra*, to this case, thereby requiring defendant to send a second notice of nonrenewal to plaintiff because a notice of reinstatement was the last "notice" that plaintiff received. In *Slaughter*, the insurer sent the insured a notice of cancellation that included a notice of intent not to renew the insurance policy. However, before the notice of cancellation became effective, the policy was reinstated by the insurer. On the basis of these facts, the Court of Appeals concluded that the insurer was obligated by the terms of the policy to send the insured a second notice of intent not to renew before it could properly claim that the policy had not renewed at the end of the term.

Plaintiff argues that *Slaughter* requires a second notice of nonrenewal to be sent to an insured any time a notice of nonrenewal is followed by a notice of reinstatement, and therefore, that because defendant did not send plaintiff a second notice of nonrenewal following the notice of reinstatement, defendant must be categorically barred from claiming that it complied with the notice provision in the insurance policy. While we agree with the underlying principle of *Slaughter*, we do not believe that an insured categori-

cally may recover where a second notice of nonrenewal is not sent. Rather, we believe it is more appropriate to analyze the facts of the case under the previously enumerated elements of estoppel.[6]

Just as an estoppel may prevent the automatic nonrenewal of an insurance policy because of delinquent payments, it also may prevent an insurer from claiming that it met the notice requirements contained within a policy. *Mooney v Nationwide Mut Ins Co*, 172 AD2d 144; 577 NYS2d 506 (1991). In *Mooney*, the New York Supreme Court held that the principle of estoppel applied in a situation remarkably similar to the present case. In that case, the plaintiff mailed the defendant a check covering an overdue premium on May 8, 1988. *Id.* at 146. The next day the defendant sent the plaintiff a notice canceling the policy as of May 26, 1988, for nonpayment of premium. On May 10, 1988, the plaintiff was sent a notice that because of his driving record, his insurance coverage would be terminated on June 2, 1988; the plaintiff testified that he did not carefully read this notice because he assumed it concerned his late premium payment. *Id.* Shortly after receiving the May 10, 1988, letter, the plaintiff received a reinstatement notice that stated that the plaintiff's automobile insurance was reinstated and the notice of cancellation was retracted. The reinstatement notice made no mention of the plaintiff's driving record or that the policy would still be canceled on June 2, 1988. *Id.*

---

[6] As explained in part II, the elements of estoppel are: (1) that the defendant's acts or representations induced plaintiff to believe that the policy was in effect at the time of the accident, (2) that the plaintiff justifiably relied on this belief, and (3) that plaintiff was prejudiced as a result of his belief that the policy was still in effect. *Fleckenstein*, 326 Mich 599.

The court held that the theory of estoppel was applicable:

> While plaintiff concedes that defendant had a right to cancel his policy based on his driving record and that the May 10, 1988 notice in and of itself would have constituted effective notice of such cancellation, he claims that since he reasonably relied on the May 11, 1988 reinstatement notice in concluding that his auto insurance was reinstated "without lapse of coverage," defendant should be estopped from asserting the cancellation based on its own in-house procedures which resulted in the reinstatement notice being the last document sent to plaintiff. " 'An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.' " While there is evidence in the record supportive of plaintiff's estoppel claim, issues of fact remain regarding whether plaintiff's reliance was reasonable and in good faith and whether defendant's reinstatement notice was the proximate cause of plaintiff not seeking coverage elsewhere; these issues which must be resolved at trial make it necessary to reverse [the] directed verdict ruling on the first cause of action. [*Id.* at 148-149 (citations omitted).]

We agree with the court's analysis in *Mooney* and find it applicable to the present case. Defendant sent plaintiff a series of notices, the last of which stated that "[t]he policy indicated remains in full force," and directed him to "[p]lease disregard the notice of cancellation previously mailed to you." This was the last piece of correspondence defendant sent to plaintiff, and no mention was made of defendant's intent not to renew the policy at the end of the term. Thus, defendant may have induced plaintiff to believe that his coverage would continue for another six-month period through its representations contained in its renewal

notice.[7] See *Automobile Club Ins Co v Donovan*, 550 A2d 622, 624 (RI, 1988) (equivocal and ambiguous notice was insufficient because "[w]hen an insurance company sends an ambiguous written correspondence to an insured, it must be interpreted in favor of the insured"). See also 2 Couch, Insurance, 3d, § 32:29, p 32-43 ("Defects in a cancellation notice which may mislead are fatal to the sufficiency of such notice").

However, just as in *Mooney*, we believe questions of fact exist whether plaintiff reasonably relied on the reinstatement notice in not seeking insurance coverage elsewhere. The series of notices of nonrenewal, cancellation, and renewal allows plaintiff to argue that defendant is estopped from arguing that it properly notified plaintiff of nonrenewal under the terms of the policy. Plaintiff has alleged facts sufficient to prevent summary disposition in favor of defendant on this issue; however, plaintiff must still prove his case for estoppel before the trier of fact.[8]

---

[7] We note that it would be relatively simple for an insurer to clarify the renewal notice by inserting language in it explaining that the renewal notice does not affect any decision regarding the renewal or nonrenewal of the policy at the end of the policy term, thereby mitigating potential confusion about the scope and existence of coverage after receiving such a renewal notice.

[8] Plaintiff also argues that there is a question of fact regarding whether the notice was actually ever mailed, as required by the terms of the policy. However, "upon proper evidence of business custom and habit of a commercial house as to addressing and mailing, the mere execution of the letter in the usual course of business rebuttably presumes subsequent receipt by the addressee." *Good v DAIIE*, 67 Mich App 270, 276; 241 NW2d 71 (1976). Defendant has produced sufficient evidence of its business custom with respect to the mailing of notices, allowing it to rely on this presumption. Moreover, plaintiff has not come forward with sufficient evidence to rebut the presumption.

IV

Summary disposition was improperly granted in favor of defendant because estoppel prevents the enforcement of the automatic nonrenewal provision of the insurance policy. Moreover, questions of material fact remain with regard to whether defendant complied with the notice provision contained in the insurance policy. Therefore, the opinion of the Court of Appeals is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

MALLETT, C.J., and BRICKLEY, BOYLE, and KELLY, JJ., concurred with CAVANAGH, J.

TAYLOR, J. (*dissenting*). The majority exemplifies in marked degree that hard cases make bad law.[1] While plaintiff's injuries are certainly tragic,[2] so too is the damage done to the fabric of our law of contracts by today's inappropriate utilization of the estoppel doctrine to allow creation of a new unbargained-for contract between the parties. I would affirm the decision of the trial court and the Court of Appeals.

The majority concedes that language in the insurance policy called for an automatic nonrenewal of the six-month insurance policy, given plaintiff's late pay-

---

[1] *Northern Securities Co v United States*, 193 US 197, 400; 24 S Ct 436; 48 L Ed 679 (1904) (Holmes, J., dissenting) ("[g]reat cases like hard cases make bad law"). See also *Galli v Kirkeby*, 398 Mich 527, 538; 248 NW2d 149 (1976) (COLEMAN, J., dissenting) ("[t]his is a 'hard case' and there is a temptation to bend the law to accommodate plaintiffs").

[2] The majority first tips its hand that this is a hard case when it unnecessarily mentions, not once, but twice, that plaintiff was left substantially disabled, and then also gratuitously states that plaintiff suffered serious brain injuries and lives in a long-term supervised care program, *ante*, pp 289-290, 292.

ments. That should end this case because estoppel cannot be utilized to create a new contract.[3] Heedlessly, the majority has nevertheless plowed ahead to hold that the principle of "estoppel bars defendant from enforcing the automatic nonrenewal provision of the insurance contract." *Ante*, p 295. The majority bases its estoppel holding on the wholly irrelevant but confusing background matter that the insurance company had repeatedly accepted late payments and

---

[3] 16B Appleman, Insurance Law & Practice, § 9090, p 576 ("Insurance contracts cannot be created by estoppel"); *Hill* v *Farmers' Mut Fire Ins Co*, 129 Mich 141, 143; 88 NW 392 (1901) ("Courts cannot make contracts. They can only construe them"); *Ruddock* v *Detroit Life Ins Co*, 209 Mich 638, 654-655; 177 NW 242 (1920) (estoppel may not be extended to make a new contract). The first statement from 5 Couch, Insurance, 3d, § 78:1, p 78-5, cited by the majority at *ante*, p 295, is irrelevant to the case at bar because the insurer's actions were not taken "for nonpayment of premiums." As Couch states elsewhere: "There is a clear distinction between failure to renew a policy which has or soon will cease to exist, and the cancellation or termination of an existing policy." 2 Couch, Insurance, 3d, § 29:3, p 29-6. Couch does state that "under certain circumstances" an insurer may be estopped from asserting that the policy has expired and was not renewed. *Id.* at § 29:45, p 29-54. However, the only cases cited for this proposition are factually inapposite, and this explains why they are not cited by the majority. Further, this very section also states that an insured is charged with knowledge of the stated expiration date in a policy. It is undisputed that plaintiff did not have a valid proof of insurance in his car when he was injured in the automobile accident. This is because defendant never mailed plaintiff a new proof of insurance or a new policy. Indeed, at the time of the accident, plaintiff did not have any insurance in effect, and therefore he appears to have been driving in violation of MCL 500.3102(2); MSA 24.13102(2), which makes it a criminal misdemeanor for an owner or registrant to drive a vehicle without no-fault insurance. Under such circumstances, it cannot fairly be said that defendant induced plaintiff into believing that the policy was in effect at the time of the accident. I also find the majority's reference to *Unruh* v *Prudential Property & Casualty Ins Co*, 3 F Supp 2d 1204 (D Kan, 1998), misplaced. In *Unruh*, the court allowed an injured party to take discovery in an effort to establish equitable estoppel. However, the insurance company had sent the driver an offer to renew his current policy and had deposited a premium check. In stark contrast, neither an offer to renew nor a premium check was sent in the case at bar.

continually renewed plaintiff's policies notwithstanding those late payments.

I believe the majority errs in applying estoppel to the case at bar. In this regard, it is difficult to improve on the analysis of the United States Court of Appeals for the Sixth Circuit when faced with a similar argument:

> While an insurer may be estopped from denying the existence of an insurance policy, estoppel has not been employed by Michigan courts to extend an insurance policy beyond the term provided therein and thereby, in essence, create a second contract which was not bargained for. . . . [D]etrimental reliance and estoppel have not been employed to create insurance liability ad infinitum. Rather, when an insurance policy expires by its own terms it cannot be construed to remain in effect even if no notice of cancellation or expiration was given or received. [*Int'l Harvester Credit Corp v Wilkie*, 695 F2d 231, 235 (CA 6, 1982).][4]

Plaintiff's insurance policy expired by its own terms six days before the automobile accident. It is improper for the majority to conclude that estoppel may be invoked to possibly create a new contract so that plaintiff may receive no-fault benefits.[5]

---

[4] I find the majority's efforts to distinguish this case from the case at bar unpersuasive. While the plaintiff's argument in *Wilkie* may have been different, the Sixth Circuit's holding can and should be applied here.

[5] The majority's reliance on *Mooney v Nationwide Mut Ins Co*, 172 AD2d 144; 577 NYS2d 506 (1991), is misplaced. *Mooney* invoked estoppel to prevent an insurance company's attempt to cancel a policy during the policy term. Such a holding is an unremarkable utilization of estoppel. However, stating that estoppel may bar an insurer from denying the existence of an existing insurance policy is a far cry from the holding of the majority today, which would allow estoppel to create a new unbargained-for contract. I simply do not see how it can legitimately be held that acceptance of late monthly payments during the term of a six-month contract can be the basis for creating a new contract for another six-month

I agree with the majority that defendant mailed plaintiff the notice of nonrenewal. However, I disagree with the majority's conclusion that estoppel may invalidate the mailed notice of nonrenewal. *Ante*, p 304, n 8. The notice of nonrenewal indicated that defendant would not renew its insurance contract with plaintiff, i.e., defendant would not enter into a new contract for the next six-month period, when the existing policy expired on November 27, 1991, because he had acquired too many underwriting points. It is also the case that the policy (which was to expire on November 27, 1991) was almost canceled before the appointed expiration date because of late payments. The fact that defendant accepted late payments and thereby did not cancel the existing policy before its set expiration date is unrelated to the fact that plaintiff was on notice that the policy would not be renewed when it did in fact expire. Plaintiff was put on notice that he needed to obtain a new insurance provider as of November 27, 1991. The fact that the existing policy was almost canceled even before November 27, 1991, is irrelevant to the fact that plaintiff still needed to obtain a new insurance provider once the policy expired. Sending a notice stating that the existing policy was not going to be

term. In response to this argument, the majority facilely asserts, *ante*, p 300, n 5, that I have misread *Mooney*. This is not the case. In fact, it is the majority that fails to carefully read the case. As the *Mooney* court said: "[D]efendant sent notice to plaintiff that due to his and his brother's driving records, his insurance coverage would be terminated on June 2, 1988 . . . ." *Id.* at 146. In *Mooney*, the insurer was attempting to cancel a policy during its term, i.e., before the normal expiration date. The case at bar does not involve such a cancellation or an effort to terminate an existing policy before the normal expiration date. Rather, it involves the expiration of a policy because of a nonrenewal. Accordingly, *Mooney* is simply inapplicable.

canceled early because a late payment had been made could not have induced plaintiff into believing that the policy was going to be renewed after it expired. Further, as previously mentioned, plaintiff did not have a valid proof of insurance or a new policy on the date of the accident.

I would affirm.

WEAVER, J., concurred with TAYLOR, J.