# STATE OF MICHIGAN

# COURT OF APPEALS

SONG YU and SANG CHUNG,

        Plaintiffs-Appellants,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

UNPUBLISHED
April 11, 2017

No. 331570
Ingham Circuit Court
LC No. 14-001421-CK

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiffs appeal following the trial court's grant of summary disposition in favor of defendant on plaintiffs' breach of contract claim. We reverse and remand.

According to the affidavit filed by plaintiff Song Yu in the trial court, he and his wife, plaintiff Sang Chung, purchased a home on West Lake in Portage in 2006, where they lived until Yu accepted a new job in Lansing in 2010. According to Yu, plaintiffs moved to an apartment in Okemos at that time, retaining the West Lake house as a second home, where they spent leisure time.

In 2013, plaintiffs decided to sell the West Lake house and to purchase a home in East Lansing, which they did in March 2013. In February 2013, they met with a realtor at the West Lake house to discuss listing it for sale. At that time, they discovered some water damage in the home due to a water supply line leak in the bathroom. They filed a claim with defendant and were paid approximately $5,000. In November 2013, they received notice from defendant that the homeowner's policy would renew on December 8 for a one-year period. Plaintiffs paid the premium and the policy renewed.

On Christmas Day 2013, plaintiffs received a call from their neighbors and were informed that icicles were forming on the exterior of the West Lake home. Yu drove to the

home and discovered another water leak, this time resulting in much more extensive damage.[1] Shortly after reporting the claim to defendant, plaintiffs received a letter from defendant dated December 16 notifying them that the homeowners' coverage was being terminated effective January 18, 2014, because "the dwelling has been unoccupied for more than 60 days or is vacant." In January, plaintiffs received a check from defendants refunding a portion of the premium, presumably representing the period from the effective date of cancellation until the end of the policy term.

In June 2014, plaintiffs were notified by defendant that it was denying the December 2013 claim. The stated reasons were: (1) that plaintiffs did not reside in the premises at the time of loss and it was not a "residence premises" as required by the policy, (2) that the house had been vacant for more than 60 consecutive days, and (3) that the home had been unoccupied for more than 6 consecutive months.

Plaintiffs filed suit for breach of contract. Following the filing of cross-motions for summary disposition, the trial court concluded that there was no genuine issue of material fact that defendant could deny coverage for the above-stated reasons and that plaintiffs had not established their claim under equitable estoppel. Plaintiffs now appeal and we reverse.

On appeal, plaintiffs argue in the alternative that either the above-stated reasons do not apply in this case or that defendant is equitably estopped from denying coverage. Because we agree with plaintiffs' estoppel argument, we need not address the applicability of the stated reasons for denial of coverage. We do note that, in the absence of a valid estoppel argument, our decision in *Vushaj v Farm Bureau General Ins Co of Michigan*, 284 Mich App 513; 773 NW2d 758 (2009), is somewhat persuasive in favor of defendant. But, by the same token, our decision in *McNeel v Farm Bureau Gen Ins Co of Michigan*, 289 Mich App 76; 795 NW2d 205 (2010), would seem to favor plaintiffs, at least on the issue of "vacant" and "unoccupied."

In any event, as stated above, we agree that, under the facts of this case, defendant is estopped from denying coverage. Our Supreme Court discussed equitable estoppel in the context of insurance coverage in *Morales v Auto-Owners Ins Co*, 458 Mich 288, 296-297; 582 NW2d 776 (1998):

> However, we find the reasoning of the Court of Appeals unpersuasive under the facts of this case. Defendant repeatedly accepted plaintiff's late payments and continually renewed the plaintiff's policy. As a result, we agree with plaintiff that the principle of equitable estoppel bars defendant from enforcing the automatic nonrenewal provision of the insurance contract.
>
> The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract. With regard to payment provisions of an insurance policy, it is generally recognized that "because provisions for forfeiture, lapse, or suspension for nonpayment of

---

[1] Plaintiffs claimed over $80,000 in damage due to this second loss.

premiums, assessments, or dues are for the benefit of the insurer, the insurer may waive, or may be estopped to assert, such a provision through its conduct or words." 5 Couch, Insurance, 3d, § 78:1, p 78-5. Moreover, "under certain circumstances the insurer may be estopped from asserting that the policy had expired and that it had not been renewed." 2 Couch, Insurance, 3d, § 29:45, p 29-54.

\* \* \*

Therefore for equitable estoppel to apply, plaintiff must establish (1) that the defendant's acts or representations induced plaintiff to believe that the policy was in effect at the time of the accident, (2) that the plaintiff justifiably relied on this belief, and (3) that plaintiff was prejudiced as a result of his belief that the policy was still in effect. *Fleckenstein v Citizens' Mut Automobile Ins Co*, 326 Mich 591, 599; 40 NW2d 733 (1950); see also *Unruh v Prudential Property & Casualty Ins Co*, 3 F. Supp. 2d 1204, 1207-1208 (D Kan, 1998).

We are not necessarily persuaded by plaintiffs' argument that they justifiably relied on the belief that coverage was in effect in December 2013 because their living circumstances were the same in February 2013, when the first claim was paid, as it had been for some time before. But, we are persuaded that defendant is estopped from denying coverage based upon (1) its knowledge in February 2013, (2) that, despite this knowledge, it renewed the policy in December 2013, and (3) after cancelling the policy and refunding plaintiffs a pro rata share of the premium, defendant retained the premium for the time period in which the loss occurred.

With respect to defendant's knowledge as of February 2013, defendant itself quotes in its brief from the deposition testimony of its adjuster who handled the February 2013 claim. Defendant quotes the following part of the adjuster's testimony:

Q. Are you sure that he [Song Yu] told you that he was moving to Lansing?

A. Based on the notes that I inputted in the file and my history of working claims and putting notes—making notes and referencing, yes.

Q. Would it surprise you to know that he had lived in Lansing since July of 2010?

A. Yes.

Q. Did you ask Song Yu whether he was living in the home at 1724 Forest when you talked to him on February 8th of 2013?

A. I don't—I didn't note that—

\* \* \*

THE WITNESS: I didn't note that I asked him that, no.

BY MR. NOUD:

Q. Well, why didn't you ask him?

A. It didn't seem to be important at that point in time.

Q. Well, if he wasn't living in the home at that time wouldn't that be important?

A. Again, when he told me he was moving and then when I did make the inspection it was evidence that that was the case, there were boxes of goods boxed up and that I thought it was in the process of moving. There were doors laying on the living room floor, kitchen cabinets being painted, and he said that he had been doing some repairs to get ready to put it on the market. That seemed logical to me.

* * *

A. That he didn't—he made me believe that they were going back and forth, that they were actively moving, not that it had been sitting there for three years empty.

Q. And what did he say exact—what were his exact words that led you to believe that he was actively going back and forth?

A. He told me that they had been going back and forth and were preparing it for sale.

Defendant relies upon this testimony to support its argument that it had no reason to believe that "Plaintiffs were not living at the home until just prior to this loss, when the home was discovered to be vacant and the cancellation process began." We do not agree with defendant's interpretation of this testimony.

We would concede that this might suggest that defendant had no reason to believe that plaintiffs' status in the house had been that way for two or three years prior to February 2013. That is, if the only basis to find that equitable estoppel applies is that (1) the status of the house in December 2013 was the same as it was in February 2013, and that (2) defendant knew that, then we might agree that the testimony does not establish the second point. But, as we stated, we do not believe that the applicability of equitable estoppel is dependent upon a showing that defendant knew in February 2013 when it paid the first claim that the status of the house was the same as it was in December 2013.

Rather, what we find important is that defendant was aware, as the adjuster testified, in February 2013 that plaintiffs were "actively moving." It would therefore be logical to conclude that defendant understood that plaintiffs were no longer residing in the house and that it was unoccupied and vacant within defendant's proposed interpretation of those terms in the insurance policy. And certainly defendant should have understood that 10 months later when defendant renewed the policy and accepted plaintiffs' premium payment.

-4-

We also find it important that, in cancelling the policy and refunding a pro rata share of the premium, defendant retained the portion of the premium up to the stated effective date of the cancellation in January 2014. Defendant argues that an "insurance company should not be required to pay for a loss for which it failed to charge a premium." But, at the same time, an insured should not be required to pay a premium for coverage that the insurance company refuses to provide.

In sum, defendant knew, by its own admission, as early as February 2013 that the stated reasons for denying the subsequent claim already existed, or the existence of one or more of those reasons would soon exist. Yet, not only did defendant fail to inform plaintiffs that they would need to obtain different coverage, it renewed the policy several months later, charging and retaining a premium for the time period during which the loss occurred. Accordingly, we conclude that defendant's actions and inaction reasonably led plaintiffs to believe that they were covered by the insurance policy issued by defendant and paid for by plaintiffs.

For these reasons, we conclude that the trial court erred in granting summary disposition in favor of defendant and against plaintiffs. On remand, the trial court shall enter judgment in favor plaintiff on the issue of coverage and proceed to determine damages.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs.


/s/ Mark J. Cavanagh
/s/ David H. Sawyer